**In re Dovey J. ROUNDTREE,**
**Petitioner.**

**No. 85–809.**

District of Columbia Court of Appeals.

Argued Nov. 8, 1985.

Decided Nov. 8, 1985.

Opinion Dec. 31, 1985.

Ruth R. Banks, Washington, D.C., for petitioner.

Fern Flanagan, Asst. Bar Counsel, Washington, D.C., with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on the brief, for respondent, the Bd. on Professional Responsibility.

Before NEBEKER, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks reinstatement as a member of the bar of the District of Columbia after having been suspended for several disciplinary violations. The hearing committee which held a hearing on her petition for reinstatement, the Board on Professional Responsibility, and Bar Counsel all support the petition. The sole issue before this court is whether petitioner has adequately demonstrated that she is fit to resume the practice of law. We believe that she has. Accordingly, we entered an order granting her petition immediately after oral argument. We now file this opinion setting forth the reasons behind our order.

**I**

The Board on Professional Responsibility (BPR) found that petitioner had committed one violation of Disciplinary Rule (DR) 1–102(A)(4),[1] four violations of DR 6–101(A)(3),[2] and two violations each of DR 7–101(A)(1), (2), and (3).[3] This court upheld

---

1. DR 1–102(A)(4) prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

2. DR 6–101(A)(3) states that an attorney shall not "[n]eglect a legal matter entrusted to him."

3. DR 7–101(A)(1) prohibits an attorney from intentionally failing "to seek the lawful objectives of his client...."

DR 7–101(A)(2) prohibits an attorney from intentionally failing "to carry out a contract of

the BPR's findings and suspended her from the practice of law for a year and a day. *In re Roundtree,* 467 A.2d 143 (D.C.1983).

Pursuant to Rule XI, § 21(5) of our Rules Governing the Bar, Mrs. Roundtree filed a petition for reinstatement after her period of suspension had expired. At a hearing before a BPR hearing committee, she presented evidence of her moral character, integrity, and professional competence through the testimony of several witnesses,[4] as well as affidavits and letters of commendation.[5] In addition, Mrs. Roundtree testified on her own behalf.

Without exception, all of the evidence was favorable to Mrs. Roundtree. It demonstrated that she is highly regarded in the District of Columbia legal community, as well as the non-legal community, as a person of high moral character, integrity, and competence; that she is not likely to commit future disciplinary violations; and that, if reinstated, she does not intend to engage in full-time legal practice. In addition, during the past year she has engaged in consultative work with her church and her former law partner, and has participated in continuing legal education programs which have enabled her to maintain competency and learning in the law. Mrs. Roundtree testified that she fully appreciated the wrongfulness of the conduct that resulted in her suspension. She also offered evidence that her health had improved.

Bar Counsel did not present any witnesses and, "having no evidence to the contrary," did not oppose Mrs. Roundtree's petition for reinstatement. Thus the hearing committee found "by clear and convincing evidence that [Mrs. Roundtree had] satisfied the criteria for readmission set forth in Section 21(5) of Rule XI of the District of Columbia Court of Appeals," and recommended that she be reinstated to active membership in the bar.

In its report and recommendation, filed a few weeks later, the BPR adopted the findings of the hearing committee and recommended to this court that Mrs. Roundtree be reinstated. Bar Counsel does not oppose the petition and urges us to grant it.

## II

Under our Rules Governing the Bar, this court must decide whether petitioner is "fit to resume the practice of law." D.C.Bar R. XI, § 21(6). To make that determination, we must conclude that she has the "moral qualifications, competency, and learning in law required for readmission," so that her reinstatement would "not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C.Bar R. XI, § 21(5). The burden of proof in a reinstatement case is on the petitioner to demonstrate by clear and convincing evidence that he or she is fit to resume the practice of law. *Id.;*[6] *see In re*

employment entered into with a client for professional services...."

DR 7–101(A)(3) prohibits an attorney from intentionally "[p]rejudic[ing] or damag[ing] his client during the course of the professional relationship...."

4. The witnesses included a United States District Judge, a Superior Court judge, Mrs. Roundtree's former law partner, a local realtor, and a national official of Mrs. Roundtree's church, in which Mrs. Roundtree is active as a lay minister.

5. Affidavits and letters were submitted by ten persons, including two United States District Judges, a member of the District of Columbia Council, a member of the Public Service Commission of the District of Columbia, three past

and present officers of bar associations, and a professor at Howard University Law School.

6. Rule XI, § 21(5) provides in pertinent part: [After receipt of a petition for reinstatement, a] hearing committee shall promptly schedule a hearing at which the petitioning attorney shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency, and learning in law required for readmission and that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

Although the rule speaks only of a petitioner's burden before a hearing committee, we hold that the same burden rests upon the petitioner when a petition for reinstatement comes before

*Hester,* 253 Ga. 365, 366, 320 S.E.2d 541, 542 (1984); *In re Schechet,* 105 Ill.2d 516, 519, 86 Ill.Dec. 449, 451, 475 N.E.2d 828, 830 (1985); *In re Thompson,* 365 N.W.2d 262, 264 (Minn.1985); *In re Belsher,* 102 Wash.2d 844, 849, 689 P.2d 1078, 1082 (1984).

■ Although the BPR recommends that Mrs. Roundtree be reinstated, and the Office of Bar Counsel does not oppose that recommendation, those bodies are merely advisory to this court; the ultimate decision on whether an attorney is reinstated is ours alone. *See, e.g., In re Johnson,* 244 Ga. 109, 110, 259 S.E.2d 57, 59 (1979); *In re Wigoda,* 77 Ill.2d 155, 157, 32 Ill.Dec. 341, 343, 395 N.E.2d 571, 573 (1979); *In re Belsher, supra,* 102 Wash.2d at 853, 689 P.2d at 1084. The BPR's findings and recommendations are, of course, entitled to great weight. *See In re Cohen,* 83 Ill.2d 521, 524, 48 Ill.Dec. 225, 227, 416 N.E.2d 256, 258 (1981); *In re Wigoda, supra,* 77 Ill.2d at 157, 32 Ill.Dec. at 343, 395 N.E.2d at 573; *In re Capriola,* 145 Vt. 245, 246, 487 A.2d 144, 145 (1984). Before an attorney is reinstated, however, this court must be independently satisfied that the criteria for reinstatement have been met. In disciplinary cases we are required by rule to accept the findings of the BPR if they are supported by substantial evidence.[7] No such requirement appears in the rule governing reinstatements; on the contrary, the rule makes clear that the recommendation of the BPR is only a recommendation, and that the determination of fitness to resume the practice of law rests entirely with this court. D.C.Bar. R. XI, § 21(5), (6).

■ Rule XI, § 21(5) states in broad and general terms[8] the criteria for reinstatement of a suspended or disbarred attorney

to membership in the bar. Reading the rule in light of the overall purposes of the disciplinary system,[9] we conclude that there are five factors to be considered in each reinstatement case: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law. *See In re Cohen, supra,* 83 Ill.2d at 524, 48 Ill.Dec. at 227, 416 N.E.2d at 258; *In re Cory,* 300 Md. 177, 179, 477 A.2d 273, 274 (1984). An attorney seeking reinstatement must convince the BPR, and ultimately this court, that his or her "resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C.Bar R. XI, § 21(5). In any reinstatement case, primary emphasis must be placed on the factors most relevant to the grounds upon which the attorney was suspended or disbarred. This does not mean that other factors may be ignored, but only that they are of less consequence.

In this case, although petitioner committed several violations of the disciplinary rules, they were not so serious as to make her permanently ineligible for readmission to the Bar, so long as she demonstrates a willingness and an ability to correct past mistakes and avoid future ones. Petitioner testified before the hearing committee that she intends to improve her system of tracking cases by the use of a "very tight tickler system," that she is learning how to use

this court, after the hearing committee and the BPR have made their recommendations. That is, the petitioner must demonstrate to this court, by clear and convincing evidence, that he or she meets the qualifications for reinstatement which are set forth in the rule.

7. D.C.Bar R. XI, § 7(3); *see In re Alexander,* 466 A.2d 447, 451 (D.C.1983), *cert. denied,* 466 U.S.

904, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984); *In re Dwyer,* 399 A.2d 1, 11 (D.C.1979).

8. See note 6, *supra.*

9. "[T]he purpose of bar discipline [is] to protect the public, the courts, and the legal profession from the misconduct of individual attorneys." *In re Smith,* 403 A.2d 296, 300 (D.C.1979).

her home computer, and that she expects to make use of her church's clerical staff. Since most of her disciplinary violations resulted from neglect in handling legal matters entrusted to her, these steps reduce the likelihood that she will commit the same or similar violations in the future. In addition, evidence was presented of petitioner's improved health, which is significant here because petitioner's disciplinary violations were attributable, at least in part, to health problems which diminished her ability to keep up with the demands of a busy law practice.[10]

Petitioner also testified that she was fully cognizant of the seriousness of her misconduct. Since her suspension she has taken part in continuing legal education programs and has been active in church and community affairs. That her integrity was vouched for by several prominent and highly credible witnesses provides strong support for the credibility of her own testimony. Finally, the evidence shows that petitioner's moral character is highly esteemed, and her present qualifications and competence to practice law are not questioned by anyone.

■ Most of Mrs. Roundtree's evidence was in the form of affidavits and testimonials concerning her past and present professional and personal life, as well as her involvement in the community. Although evidence of her moral character and integrity does have some probative value, *see In re Cohen, supra,* 83 Ill.2d at 524, 48 Ill. Dec. at 227, 416 N.E.2d at 258; *In re Wigoda, supra,* 77 Ill.2d at 162, 32 Ill.Dec.

at 345, 395 N.E.2d at 575; *In re Cory, supra,* 300 Md. at 183, 477 A.2d at 276, it would not be sufficient in itself to warrant her reinstatement to membership in the bar. More important, in our view, is the evidence that she is not likely to commit future disciplinary violations of the kind for which she was suspended in the first place. Her participation in continuing legal education programs, her establishment of a tickler system, her plan to make use of her church's clerical staff, and her acquisition of computer skills convince us that she has taken the appropriate steps to correct the deficiencies that most contributed to her past violations, and that she has maintained the requisite degree of competence to continue in the practice of law.[11] We are satisfied that petitioner has demonstrated by clear and convincing evidence that she has the "moral qualifications, competency, and learning in law required for readmission," and that her reinstatement "will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C.Bar R. XI, § 21(5).

Because Mrs. Roundtree has made the requisite showing that she is "rehabilitated and a fit person to resume the practice of law," *In re Cohen, supra,* 83 Ill.2d at 524, 48 Ill.Dec. at 227, 416 N.E.2d at 258, her petition for reinstatement is

*Granted.*

---

10. Petitioner also testified that she does not intend to engage in the full-time practice of law, and that she will work with co-counsel in all her future cases in order to improve her "administration of justice." Neither of these factors has any bearing on whether petitioner is reinstated, for there is no such thing as partial reinstatement. Although petitioner is entitled to employ co-counsel and to engage in only a limited legal practice, she is not required to do so, nor is her reinstatement conditioned upon her doing so.

11. Learning in the law is an important factor in every reinstatement case. A lawyer seeking reinstatement after a period of suspension or dis-

barment should be prepared to demonstrate that he or she has kept up with current developments in the law. What must be proven in any given case will depend, in part, on the length of the suspension or disbarment and the reasons for it. In general, however, the longer the suspension, the stronger the showing that must be made of the attorney's present competence to practice law. In this case there is no real dispute as to Mrs. Roundtree's legal knowledge, and we are persuaded that her activities during her suspension were sufficient to maintain her professional skills at a high level.