**In re Elaine W. KERR, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 95–BG–910.**

District of Columbia Court of Appeals.

Submitted Oct. 27, 1995.

Decided April 25, 1996.

Before SCHWELB and RUIZ, Associate Judges, and PRYOR, Senior Judge.

---

PER CURIAM:

Petitioner, a clinical psychologist and former attorney, who was disbarred in May 1977 for having committed a crime (mail fraud) involving moral turpitude, seeks reinstatement.[1] Petitioner's petition is fully supported by Bar Counsel, the Hearing Committee, and the Board on Professional Responsibility (the "Board").

The Board determined that petitioner "has met her burden of proving her fitness to practice law under the criteria set forth in *In re Roundtree*, 503 A.2d 1215 (D.C.1985)," and recommends that the court reinstate petitioner. This rule, *inter alia*, allows reinstatement upon a showing by clear and convincing evidence that petitioner is "fit to resume the practice of law." D.C.Bar R. XI, § 16(d) (1995). We agree with the Board's recommendation.

The court, *sua sponte*, raised the issue of restitution to petitioner's former clients who suffered financial harm as a result of petitioner's actions.[2] In response to the court's inquiry, petitioner has acknowledged her financial responsibility and submitted a plan for making restitution, to which neither Bar Counsel nor the Board objects.[3] Accordingly, the court hereby approves this plan of restitution. We also adopt the suggestion that petitioner file annual reports, regarding restitution, with the court, with copies to the Board on Professional Responsibility and the Office of Bar Counsel, understanding that a material failure to comply could result in new disciplinary action.

Having thus determined that petitioner has satisfied the provisions for reinstatement as set forth in Bar R. XI, § 16(d), as interpreted by *Roundtree, supra*, we find that petitioner is fit to resume the practice of law. Substantially for the reasons set forth in the Report and Recommendation of the Board, a copy of which is attached to this opinion,[4] we grant the Petition for Reinstatement.

Petitioner is hereby reinstated to the Bar of the District of Columbia, effective immediately. *See* D.C.Bar R. XI, § 16(a).

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of ELAINE W. KERR, Petitioner

Bar Docket No. 397–94

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Petitioner has filed this Petition for Reinstatement to the Bar of the District of Co-

---

1. In 1978, petitioner sought reinstatement but was denied, notwithstanding the Board's favorable recommendation, due to this court's determination that an attorney disbarred pursuant to D.C.Code § 11–2503(a) is not eligible for reinstatement unless the underlying conviction is reversed or a pardon is issued in connection therewith. *See In re Kerr*, 424 A.2d 94 (D.C.1980) (en banc). Subsequently, this court reconsidered its interpretation of § 11–2503(a), and determined that an attorney disbarred for committing a crime involving moral turpitude may seek reinstatement within five years, pursuant to D.C.Bar R. XI, § 16(a). *See In re McBride*, 602 A.2d 626 (D.C.1992) (en banc).

2. Order filed November 29, 1995.

3. The actions for which petitioner was ultimately disbarred financially harmed two former clients. One is not currently available. Should she ever become available, we will revisit the issue at that time. Commencing June 1, 1996, the other will be paid $10,500 by petitioner, an amount equal to one-half of this former client's losses (there was an equally culpable co-defendant) over seven years, without interest, at the rate of $1,500 per year, in semi-annual installments of $750, due and payable June 1 and December 1 of the respective year. To insure continued payment, petitioner shall secure a life insurance and disability policy for seven years commencing June 1, 1996, in the sum of $10,500, paid to the benefit of this former client. Although not stated in petitioner's response to the court's order, in the event of death of this former client, restitution will continue to be paid to this former client's estate.

Additionally, petitioner is obliged to make continuing efforts to locate the other former client, whose whereabouts are presently unknown.

4. The Board, in turn, recommended reinstatement based upon the reasons set forth in the Report and Recommendation of the Hearing Committee Number Two, a copy of which is attached to the Board's Report and Recommendation, and is incorporated herein by reference.

lumbia after her suspension and disbarment from the practice of law for almost 22 years. A prior petition for reinstatement was favorably recommended by a hearing committee and by the Board in 1979. It was rejected by the Court on the grounds that Petitioner had been disbarred pursuant to D.C.Code § 11–2503(a) on the basis of her conviction of a crime of moral turpitude and that such a disbarment was mandatory and permanent in all cases in which a pardon has not been granted. See *In the Matter of Kerr,* 424 A.2d 94 (D.C.1980).

In 1992, in *In re McBride,* 626 [602] A.2d 629 [626] (D.C.1992), the Court of Appeals, sitting *en banc,* specifically overruled its prior decision in *Kerr* and created the opportunity for Petitioner to renew her effort to be reinstated.[1] Petitioner filed the Petition for Reinstatement on September 20, 1994, and a hearing was held before Hearing Committee Number Two on December 5, 1994. Petitioner presented four letters of recommendation from physicians and psychologists who are her colleagues in her current psychology practice, in addition to the live testimony of three attorneys who are familiar with her current practice and her qualifications to practice law. Bar Counsel supported her readmission, and the Hearing Committee has issued a comprehensive report which finds that Petitioner has shown her fitness to practice law and recommends her reinstatement.

### DISCUSSION

Petitioner received her law degree from the University of Maryland Law School in 1957. She was admitted to the Maryland Bar in 1957, to the District of Columbia Bar in 1960 and the Commonwealth of Virginia Bar. In 1970, Petitioner was charged in the United States District Court for the District of Columbia with mail fraud (18 U.S.C. § 1341), interstate transportation of stolen property (18 U.S.C. § 2314), forging and uttering (22 U.S.C. § 1401), and larceny after trust (22 U.S.C. § 2203). The charges

stemmed from her representation of two clients, Ms. Claudia Borthwick and Ms. Frances Meager, in transactions involving a co-defendant, Mr. James Benn.

On September 10, 1971, Petitioner entered an *Alford* plea to one count of mail fraud and was sentenced to two years of incarceration, with a minimum sentence of six months. Petitioner filed a series of motions to set aside the plea, including an appeal to the U.S. Supreme Court. All of these were unsuccessful, and she served approximately nine months at the Federal Reformatory for Women at Alderson, West Virginia. She was suspended from the practice of law by the Court of Appeals in November, 1972 and disbarred in May, 1977. She filed her first petition for reinstatement in 1978.

Petitioner received a masters degree in clinical psychology in 1975 and completed her doctorate in 1977. She has also done substantial post-doctoral work. She currently works as a psychologist, with a specialty in family and forensic issues. She testifies frequently as an expert witness.

The Board has reviewed carefully the record of Petitioner's conviction, disbarment, and of the prior reinstatement proceeding as well as the testimony in the instant matter. We note that although in the initial reinstatement proceeding the Hearing Committee was mildly troubled by Petitioner's minimization of her culpability for the underlying crime, Petitioner now readily admits that she allowed herself "to be involved in the perpetration of a fraud." Hearing Transcript at 134. Through her training and experience as a psychologist, Petitioner has also gained insight into her mental state at the time of her misconduct. In addition, she has discussed her criminal conduct with her colleagues. *See, e.g.,* Hearing Transcript at 81. Thus, unlike the petitioner in *In re Borders,* Bar Docket No 320–93, Petitioner here offers a plausible explanation of why she engaged in the original misconduct and, based on her explanation and subsequent conduct, there

---

1. The Court ruled that:

[A]ll attorneys disbarred upon conviction of a crime involving moral turpitude shall no longer be disbarred for life under D.C.Code § 11–2503(a) and ... such attorneys, like all others

who have been disbarred, shall be entitled to petition for reinstatement pursuant to D.C.App.R. XI § 16(a), after five years of disbarment. *In re Kerr,* therefore, is overruled. (*Id.* at 641).

appears to be little, if any, likelihood of recurrence of any similar ethical problems. We also note that Petitioner has taken over 30 hours of CLE courses in the past three years. These courses included discovery, evidence, tax, child custody issues, and legal research as well as ethics—all subjects that are relevant to her proposed practice of law in the areas of family and health law.

The Board is of the view that Petitioner has met her burden of proving her fitness to practice under the criteria set forth in *In re Roundtree*, 503 A.2d 1215 (D.C.1985), and therefore, we recommend her reinstatement. In support of our conclusion and recommendation, we respectfully refer the Court to the discussion of these factors in the thorough report of Hearing Committee Number Two.

## RECOMMENDATION

The Board recommends that the District of Columbia Court of Appeals grant Petitioner's Petition for Reinstatement.

BOARD ON PROFESSIONAL RESPONSIBILITY

BY /s/ Karen Kay Christensen

Karen Kay Christensen,

Vice–Chair

Dated: June /, 1995

All members of the Board on Professional Responsibility join in this Report and Recommendation except Mr. Rezneck, who is recused.

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY HEARING COMMITTEE NUMBER TWO

In the Matter of DR. ELAINE W. KERR, Petitioner

Bar Docket No. 397–94

**REPORT AND RECOMMENDATION OF THE HEARING COMMITTEE NUMBER TWO TO THE BOARD OF PROFESSIONAL RESPONSIBILITY REGARDING PETITION FOR REINSTATEMENT**

## I. *INTRODUCTION*

For the past fifteen (15) years, Petitioner has sought reinstatement to the Bar. But for the 1980 decision of the District of Columbia Court of Appeals that disbarments based on convictions involving moral turpitude were permanent, which decision was overruled in 1992, she would probably have been reinstated long ago. Since the time a prior hearing committee first recommended her reinstatement in 1979, the evidence of her fitness to resume the practice of law has only improved. As set forth below, the Committee recommends that Petitioner be reinstated.

## II. *THE FACTS*

The Petitioner, Elaine Kerr, received her law degree from the University of Maryland Law School (Exhibit 2) and was admitted to the Maryland bar in 1957. She was admitted to the District of Columbia Bar on April 4, 1960, by motion (Exhibit 1). While no evidence has been presented as to the date of admission, Petitioner was also admitted to practice law in the Commonwealth of Virginia. No evidence was presented that Petitioner was ever disciplined by any Bar prior to the conviction which led to her disbarment.

In 1970, Petitioner was charged in the United States District Court for the District of Columbia with mail fraud, interstate transportation of stolen property, forging and uttering, and larceny after trust. (Bar Exhibit 8). The allegations involved a scheme to defraud two victims; Claudia Borthwick and Frances Meager, by Mrs. Kerr and her codefendant, a Mr. Benn. (Bar Exhibit 8).

On September 10, 1971, Mrs. Kerr entered an *Alford* plea to one count of mail fraud (Bar Exhibit 12), (Petitioner Exhibit 7). She was sentenced to a period of incarceration and served approximately nine months (Bar Exhibit 17, Tr. 119). While she later filed motions to set aside her plea, arguing it was coerced, she admitted in the earlier reinstatement proceeding and now admits that her conduct was wrong. She maintains, however, that she did not act with the specific intent to defraud the victims. (Tr. 30). On the basis of her conviction, she was suspended and later disbarred. (Bar Exhibit 26).

The facts underlying her conviction were set forth at the hearing on her plea, few of which Mrs. Kerr now disputes. (Kerr Exhibit 7). Mr. Benn persuaded Mrs. Claudia Borthwick, by various false representations, to invest approximately $50,000, her entire life savings, in a Rosslyn, Virginia real estate venture, known as Capitol Investors. (Petitioner Exhibit 7). Claudia Borthwick sought Ms. Kerr's services as an attorney to help her rescind her agreement with James T. Benn. (Tr. 21, 23). After the rescission agreement was executed, Ms. Borthwick further consulted with the Petitioner as to the advisability of reinvesting with Mr. Benn. (Tr. 23). Petitioner, without disclosing her close business relationship with Mr. Benn, reassured Ms. Borthwick that her money was secure with Mr. Benn. (Petitioner Exhibit 7; Tr. 25). Ms. Borthwick thereafter reinvested her funds, all of which were lost.

The Petitioner has acknowledged that she failed to provide adequate representation for Ms. Borthwick by not arranging to meet with the client (Tr. 25), by not making clear to the client the possible conflict of interest resulting from her representation of another corporation in which Mr. Benn was a principal, and by not conducting an independent investigation of the Capital Investors project (Tr. 27, 28), in order to advise her client on the wisdom of reinvesting. She has further admitted that her failure to adequately represent Ms. Borthwick assisted her co-defendant's scheme and resulted in serious financial loss to her client (Tr. 30–31). She admits that her misconduct was serious (Tr. 31) and violated the Disciplinary Rules and the D.C.Rules of Professional Conduct (Tr. 31, 32, 33). Consistent with her *Alford* plea, she does not admit she acted with the specific intent to defraud Ms. Borthwick. (Tr. 30, 138).

Mr. Benn also defrauded Mrs. Meager, who invested money in his company, Capital Investors. In this instance, Petitioner helped procure the loan and served as trustee on two deeds of trust which secured the loan that Ms. Meager made to Capital Investors. (Tr. 35). Immediately after the loans were made, Petitioner, acting as trustee, released the deeds of trust, knowing that the release would destroy Mrs. Meager's security for the repayment of her loan. (Petitioner Exhibit 7; Tr. 36–40).

As in the case of Claudia Borthwick, the Petitioner admits to failing in her fiduciary responsibility, this time as trustee. (Tr. 38, 39). She acknowledges that when presented with the notes and deed of trust for partial release by a third party, she should have contacted Mrs. Meager and should have asked to see evidence of the third party's authority to serve as her agent, since one of the notes had Mrs. Meager as payee. (Tr. 39, 40). The Petitioner further acknowledges that her involvement in this transaction contributed to the loss by Mrs. Meager and that this was serious misconduct on her part, although she did not benefit from the transaction. (Tr. 40, 41).

The Petitioner first applied for reinstatement on March 28, 1978 (Bar Exhibit 27). At that time, she had obtained a masters degree in clinical psychology from George Mason University (Bar Exhibit 3) (Tr. 90), and a doctorate in Philosophy from Virginia Polytechnic Institute. (Bar Exhibit 3) (Tr. 90–91). She was then serving as a director of a mental health clinic. As she testified at that time, her interest in psychology stemmed from her recognition of her own personal failings as related to her relationships with Mrs. Meager, Mrs. Borthwick and Mr. Benn. She recently testified that she started the course of psychological study to gain insight and understanding of her prior behavior and to avoid her repeating past mistakes. (Tr. 98).

The hearing committee that heard her case in 1979 recommended her reinstatement. (Bar Exhibits 28 & 31). The Committee was concerned about her recognition and appreciation of the misconduct resulting in her conviction and in her then current knowledge of ethics governing the practice of law. Thus, the Hearing Committee's recommendation of reinstatement was conditioned on her undertaking a course in ethics as a prerequisite. (Bar Exhibits 30 & 32). The Board agreed with the Hearing Committee's recommendation and Bar Counsel did not oppose. (Bar Exhibits 30 & 32).

However, on November 17, 1980, the District of Columbia Court of Appeals, sitting *en banc,* denied petitioner reinstatement. The court ruled that D.C.Code § 11–2503(a) prohibited reinstatement of a person disbarred for conviction of an offense involving moral turpitude. *In re Kerr,* 424 A.2d 94 (D.C. 1980) (*en banc*).

After the Court of Appeals ruling in her case, the Petitioner continued to practice psychology. Her career included acting as a director of various clinics and most recently, operating a solo practice as a clinical psychologist in the District of Columbia. (Tr. 11). She also continued to have contact with the courts, appearing as an expert witness in various types of cases in Maryland, Virginia and the District of Columbia. (Tr. 11, 12, 13, 14). Oddly enough, she was never cross-examined as an expert regarding her prior conviction and/or disbarment. (Tr. 11).

In 1992, the Court of Appeals, sitting *en banc,* overruled its prior decision in *In re Kerr.* See *In re McBride,* 626 [602] A.2d 629 [626] (D.C.1992) (*en banc*). This decision allowed Mrs. Kerr to seek reinstatement. Subsequent to the *McBride* decision, Mrs. Kerr has over taken thirty continuing legal education courses, including the professional responsibility course offered at the University of Virginia. (Tr. 98–101) (Bar Exhibit 2). Not only have several of her peers in psychology recommended her reinstatement (Petitioner Exhibits 1–4), but several attorneys who have discussed CLE course matter with her and referred clients to her as a psychologist, testified on her behalf, as character witnesses. (Tr. 41–49; 54–86).

A hearing on the instant petition for reinstatement was held on December 5, 1994, before Hearing Committee Number Five. Petitioner testified. Both parties submitted exhibits, all of which were received. Post hearing briefs were filed. Bar Counsel has recommended reinstatement, without conditions. As will be discussed in the following section, the Committee believes the facts to establish by clear and convincing evidence that the Petition for Reinstatement should be granted.

## III. THE PETITION FOR REINSTATEMENT SHOULD BE GRANTED

### A. The Standards for Reinstatement

Petitioner was disbarred because of her conviction for aiding and abetting a scheme to defraud two victims. Her Petition for Reinstatement is governed by D.C.Bar Rule XI, Section 16(b), which requires that she show by clear and convincing evidence that she is "fit to resume the practice of law." In particular, Petitioner must show that (1) she has the "moral qualifications, competency and learning in law required for readmission," and (2) her readmission, "will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." Section 16(d)(1)-(2).

In assessing whether these criteria have been met, the District of Columbia Court of Appeals has identified five factors to be considered:

1. The nature and circumstances of the misconduct for which the attorney was disciplined;

2. Whether the attorney recognizes the seriousness of the misconduct;

3. The attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;

4. The attorney's present character;

5. The attorney's present qualifications and competence to practice law. *In re Roundtree,* D.C.App., 503 A.2d 1215, 1217 (1985).

We briefly discuss each factor below.

### B. Nature and Circumstances of the Misconduct

The underlying offense occurred 27 years ago. It is clear from the grand jury testimony and the available records that her co-defendant was a "con man" and the principal perpetrator of the fraud. (Bar Exhibits 9, 10, 11, Tr. 141). Mr. Benn used Petitioner's legal services to legitimize his operation. Her comforting of the two victims, as their attorney and/or trustee, permitted the scheme to work. There is no evidence that

Petitioner profited financially from the scheme or received fees from anyone. (Tr. 129). She has consistently denied having acted with the specific intent to defraud and entered an *Alford* plea to count one of the indictment.

### C. *Attorney's Recognition of the Seriousness of Misconduct*

Initially Petitioner pleaded guilty, but then sought (unsuccessfully) to withdraw her plea. Her current petition for reinstatement and her testimony demonstrate an enhanced understanding of her involvement and culpability. Years of reflection have provided insight. She admits her professional relationship with the two complaining witnesses and acknowledges that her failure to fully perform her responsibilities under those relationships resulted in financial harm to the two women. She further admits that she perhaps unwittingly, aided the scheme to defraud engineered by her co-defendant. She recognizes the seriousness of her misconduct in failing to meet her professional responsibility.

Petitioner testified:

I have come to, over time, seen my culpability and what I should have done. I have gained insights by going back and thinking of conversations I had with the various people involved into what they must have been thinking, certainly with regard to the trust issues, the trust that these two women placed in me.

(Tr. 106).

She testified further:

I allowed myself to be involved in the perpetration of a fraud.

(Tr. 134). She admitted to malpractice and a breach of ethical responsibility. (Tr. 134–135). While Petitioner does not admit that she intended to defraud the victims, this is consistent with the nature of her plea.

### D. *Conduct Since Discipline was Imposed*

This factor supposes that the disbarred attorney has taken steps to remedy past wrongs and to prevent future ones.

Petitioner has been a successful psychologist for over twenty years and has treated hundreds of patients without incident. She had held positions of trust at various mental health clinics. She has testified in hundreds of cases as a forensic psychologist. (Tr. 110–111). She has engaged in *pro bono* treatment of patients on a regular basis. (Bar Exhibit 3). She has served as a professional with integrity. She has also sought to develop insight into her own psychology, so as to assure that the past transgressions are not repeated. She has participated in psychoanalysis, as well as discussed her criminal conduct with her peers.[1]

The only area of concern is the remedy of past wrongs. Petitioner initially undertook restitution, only to be rebuffed by the victims over the amount of money she then had available—$45,650. (Tr. 21, 117). She subsequently declared bankruptcy, after her attorneys were unable to reach a settlement for the civil judgments obtained by the victims. (Tr. 53). She turned over $26,000 to the bankruptcy court, but never found out how the funds were divided. (Tr. 118–119). She has been told that neither victim subsequently sought restitution from her, but this matter is unclear. (Bar Exhibit 3, Tr. 119). Because both victims had judgments against Petitioner, which were discharged in bankruptcy without protest by the victims, the matter appears to be at rest. There is no evidence as to whether either Ms. Meager or Ms. Borthwick are alive.

### E. *Petitioner's Present Character*

Petitioner has demonstrated fitness of present character, as set forth above and

---

1. When discussing her own psychoanalysis following the conviction, she explained that her doctor concluded:

    ... that Mr. Benn had been a father figure to me. He was an older man. I lost my father when I was very young. Mr. Mother and father separated and divorced and I never saw my father again.

    He thought that Mr. Benn had become a father figure and that I, having put him in that role, believed in what he said and that I was led to my detriment because of my psychological problem in trying to find a father figure, someone to replace the father I never had.

based upon the testimony of her character witnesses. (Bar Exhibit 3, Tr. 41–86).

### F. *Petitioner's Present Qualifications and Competency to Practice Law*

Bar Counsel does not take issue with Petitioner's proof of this factor. While the length of time since she was disbarred is extraordinary, Petitioner has undertaken a massive effort to re-educate herself. Her occupation brings her in constant contact with the law, courts and lawyers. Her testimony revealed her to be intelligent and careful.

### IV. *CONCLUSION*

The Committee finds by clear and convincing evidence that Petitioner has shown her fitness to resume the practice of law and, therefore, should be reinstated.

Respectfully submitted,

By: /s/ Steven M. Salky
STEVEN M. SALKY

By: /s/ Karen Spar
KAREN SPAR

By: /s/ Robert J. Harlan, Jr.
ROBERT J. HARLAN, JR.

Dated: January 8, 1995

### SUPPLEMENTAL RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Pursuant to the Court's Order dated November 29, 1995, Petitioner has filed a statement addressing the issue of restitution. Petitioner proposes to make payments through the Office of Bar Counsel for the benefit of Claudia Borthwick in the amount of $10,500 over a period of seven years. She proposes to pay this in semi-annual payments of $750, commencing in June 1996. She also proposes that this amount be without interest and that she secure for seven years a life insurance and disability policy, payable to Ms. Borthwick in the amount of $10,500. Petitioner also invites the Court to offer any guidance as to such other amount or schedule as the Court may believe is fair and appropriate.

The Board views Petitioner's proposal as reasonable and appropriate, under the circumstances of this case. Her offer is consistent with her past efforts to make restitution through her attorneys as well as through the bankruptcy process. The proposal is further indication that the Petitioner recognizes the seriousness of her misconduct and is interested in taking steps to remedy past wrongs.

The original Petition for Reinstatement appeared to the Hearing Committee and the Board to fully satisfy the *Roundtree* factors. *See In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985). While there was discussion in the hearing of Petitioner's efforts at restitution, neither of the victims of Petitioner's misconduct participated in the hearing, and Petitioner's evidence at that time showed that she had made substantial efforts at restitution, although ultimately not successful through no apparent fault of her own. Since the time of the hearing in this matter, Ms. Borthwick has contacted the Office of Bar Counsel and raised the issue of restitution. Under these new circumstances and in light of the Petitioner's past efforts in this regard, the Board believes that the proposed plan for restitution is reasonable.

The Board recommends that the Court grant Petitioner's Petition for Reinstatement as amended by her proposed plan of restitution.

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of ELAINE W. KERR, Petitioner.

Bar Docket No. 397–94

BOARD ON PROFESSIONAL RESPONSIBILITY

BY /s/ Karen Kay Christensen
Karen Kay Christensen
Vice–Chair

Dated: January 18, 1996

All members of the Board concur in this Report and Recommendation except Mr.

Banks who did not participate and Mr. Rezneck who is recused.