**In re Gale MOLOVINSKY, Petitioner.**

**No. 98–BG–689.**

District of Columbia Court of Appeals.

Submitted Jan. 7, 1999.

Decided Jan. 28, 1999.

---

Before SCHWELB and FARRELL,
Associate Judges, and KING, Senior Judge.

PER CURIAM:

Petitioner Gale Molovinsky seeks reinstatement as a member of the District of Columbia Bar. This court disbarred him in 1983 following his conviction for conspiracy with intent to defraud, forge, make, counterfeit and alter obligations of the United States. 18 U.S.C. §§ 371, 471, and 2. The report of the Board on Professional Responsibility summarizes the conduct resulting in Molovinsky's conviction, recounts his activities since his disbarment (and release from prison), carefully applies the criteria governing a petition for reinstatement, and recommends that the petition be denied. We deny the petition for the reasons stated by the Board, set forth verbatim (with deletions) in what follows:

\* \* \* \* \* \*

## BACKGROUND

On May 5, 1980, Respondent [Molovinsky] and a Mr. Edward S. Sparrow first met with Special Agent Steven Israel, an undercover agent of the U.S. Secret Service. Respondent and Sparrow expressed a willingness to manufacture and sell counterfeit currency to the agent. Respondent stated that he thought they would be able to provide a finished product of $20 bills by the end of the month, for a price of twenty to thirty cents on the dollar. The parties discussed the possibility of apprehension. Respondent identified himself as a lawyer. He stated that as first time offenders, they would not go to jail. Respondent had a telephone conversation with the agent the following day. The topics of that conversation included the counterfeiting plates which Respondent had, the production of new plates, the production and sale of counterfeit currency, Respondent's desire to eliminate Mr. Sparrow as a partner in the arrangement, and the consequences of detection and prosecution.

Respondent attended a subsequent meeting with Special Agent Israel and Special Agent Thomas Lightsey, acting undercover, on May 9, 1980. Mr. Sparrow was informed of, but had decided not to attend this meeting. Respondent and the agents discussed the details of the counterfeiting plan in detail. In addition to the plates, Respondent showed the agent a counterfeit $5 bill. Respondent also advised the agents that, if caught, they could face multiple felony charges. As the parties left the meeting, they were arrested. The next day, after Respondent called and told him of his arrest, Mr. Sparrow voluntarily appeared at the Secret Service's Washington Field Office and gave a complete, written account of the plan to sell counterfeit currency. In a subsequent meeting, Sparrow described the extensive efforts he and Respondent made over a period

of several months to plan the production of counterfeit bills. . . .

Respondent was disbarred by the Court of Appeals of Maryland on July 13, 1984. In 1990, Respondent filed a petition for reinstatement in Maryland, which was denied. Respondent's Reinstatement Questionnaire filed in this proceeding did not reveal either his 1990 petition nor the Maryland court's action. Respondent filed a second petition for reinstatement in Maryland in 1994. The Court of Appeals of Maryland denied this second petition on February 10, 1998.

Shortly after his release from prison, Respondent founded Executive Suite, an employment counseling firm for attorneys and other professionals. For a fee of $200 to $600, Respondent assisted in the preparation of a customer's resume and provided a mailing list of prospective employers. Throughout the company's existence, Respondent was involved in considerable litigation with customers, private organizations, and the District of Columbia. Respondent estimated that he filed seven to ten cases each year in Small Claims Court to enforce contracts with his clients. However, Respondent's disputes with his customers were due, in many instances, to his alleged failure to provide the promised services. A July 8, 1996 *Legal Times* article, "Job Service Sued as Scam," described Respondent's dispute with Brian Henneberry, who refused to pay Respondent "after deciding Molovinsky was running a scam." Respondent had sued to recover the $400 balance on Henneberry's $600 contract. However, Henneberry filed a counterclaim alleging fraud. On a motion for summary judgment, Superior Court Judge Satterfield found that the contract was void and that Respondent operated an employment counseling service without a license, in violation of the District of Columbia Employment Services Licensing and Regulation Act of 1984. D.C.Code §§ 36–1001, *et seq.; Molovinsky v. Henneberry,* Civil Action No. 027374–95 (Sup.Ct. July 31, 1996). Respondent relocated his business to Rosslyn, Virginia in early 1997 and began trading as Resume Doctor and Career Network. Although the Reinstatement Questionnaire required Respondent to reveal any civil complaint alleging

fraud during the period of disbarment, Respondent responded "none" to this inquiry (No. 21), and did not refer to Henneberry's claim in that or any other section of the questionnaire.

In another civil action brought by prospective female clients, Respondent was found to have sexually harassed women who responded to his Executive Suite advertisements in 1990. The jury awarded three individuals and The Fair Employment Council of Washington damages in the amount of $79,000, and the Court affirmed the award. *Molovinsky v. The Fair Employment Council of Greater Washington, Inc.,* 683 A.2d 142 (D.C. 1996). Respondent failed to reveal this adverse judgment in his response to the Reinstatement Questionnaire (No. 15). Respondent has made no attempt to satisfy this judgment.

In *District of Columbia v. Molovinsky,* Civil Action No. 0003808–97 (Sup.Ct. May 20, 1997), the Corporation Counsel sought to vacate judgments retroactively that Respondent had obtained against seven individuals, based on employment counseling services he performed when he was not licensed. Respondent consented to entry of a restraining order. Respondent failed to disclose this action in his response to the Reinstatement Questionnaire.

In his brief to the Hearing Committee, Respondent stated that he has worked as a law clerk since his incarceration, "at times without compensation, assisting other practicing attorneys in complex legal matters, [that he] represents himself *pro se* in legal matters before trial and appellate courts . . . and, in addition to reviewing developments on the law via publications as already noted above, speaks to actual practitioners each day." However, Respondent introduced no evidence of his being employed in a legal office since his incarceration. No practitioner testified on his behalf, and during oral argument before the Board, Respondent admitted that he has not worked as a law clerk since his disbarment. . . .

## DISCUSSION

◼ The Respondent has the burden of proving his fitness to practice on each of the

factors deemed relevant by the Court in *In re Roundtree*, 503 A.2d 1215 (D.C.1985):

(1) the nature and circumstances of the misconduct for which the attorney was disciplined;

(2) whether the attorney recognizes the seriousness of the misconduct;

(3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;

(4) the attorney's present character; and

(5) the attorney's present qualifications and competence to practice law. *Id.* at 1217.

### (1) *The Nature and Circumstances of the Misconduct For Which the Attorney was Disciplined*

■ Respondent was disbarred because he committed a serious crime involving moral turpitude *per se*, conspiracy to counterfeit currency of the United States. We concur with the Hearing Committee that the record reflects no mitigating circumstances that would place Respondent's conduct in a context somehow less egregious. Even though considerable time has passed since his conviction, the seriousness of the misconduct compels us to apply the remaining *Roundtree* factors strictly to ensure that the public interest is not betrayed by Respondent's premature readmission. *See In re Borders*, 665 A.2d 1381, 1382 (D.C.1995).

### (2) *Whether the Attorney Recognizes the Seriousness of the Misconduct*

We agree with the Hearing Committee that Respondent has consistently failed to admit and recognize the seriousness of his misconduct. Respondent readily admitted his involvement in the counterfeiting scheme, and the "moral failure" that led him to participate in the conspiracy. However, Respondent has consistently attempted to minimize the criminal nature of his involvement. He argues that when he was told by an associate that someone was interested in purchasing counterfeiting plates, he impulsively succumbed to the temptation to make some easy money. A professional magician, Respondent testified that if someone was willing

to pay him for "toy" plates that could not be used effectively to counterfeit currency, he did not believe he was actually committing a crime. However, he accepts the fact that what he did was wrong, that he "has fully admitted his moral failure and conduct in this matter, accepted his punishment and the subsequent Bar disciplinary measures, without bitterness, and has expressed remorse and attempted to go on with his life." In truth, however, Respondent has engaged in a pathetic, transparent effort to deceive the Hearing Committee and the Board as to his involvement in the conspiracy. According to his co-conspirator, whom Respondent decided to cut out of the deal once he realized how much money he might have to share, Respondent initiated discussions about counterfeiting about ten months before the arrest. The two had numerous conversations about producing counterfeit currency, and Respondent diligently sought out prospective printers who might be induced to help him print the currency, or from whom equipment could be rented. Respondent had a counterfeit bill in his possession when he met with undercover agents, and he engaged in several conversations in which he proposed to deliver counterfeit currency in the millions of dollars. Respondent was also well aware that his participation in the scheme was felonious; he advised the undercover agents that in the event their plan was exposed, they could expect to be indicted on multiple felony counts. For Respondent to maintain that his only involvement was a one-time, impulsive agreement only to sell toy props which could not even be used to counterfeit, perpetrates a deception that evidences his failure to recognize the seriousness of his misconduct.

### (3) *Attorney's Conduct Since Discipline Was Imposed, Including Steps Taken to Remedy Past Wrongs and to Prevent Future Ones*

Respondent's conduct since his disbarment offers no assurance that he has changed in ways that demonstrate that the public would be safe if he were reinstated. First, Respondent revealed his disdain for the truth by attempting to deceive the Hearing Committee and the Board as to the nature of the

misconduct that led to his conviction. Second, Respondent operated an employment consulting business in the District of Columbia for over a decade without obtaining the appropriate license, in violation of the local law. Third, a jury found that Respondent violated the District of Columbia Human Rights Act by sexually harassing female customers who responded to his advertisements. Fourth, Respondent has made no effort to satisfy the judgment in the harassment case, and has made no effort to reimburse the government for the costs of the appeal from his criminal conviction. Finally, Respondent withheld potentially embarrassing information and made misrepresentations in several of his responses to the Reinstatement Questionnaire. Respondent has the burden of proving that his conduct since sanctions were imposed demonstrates sound character traits, and that he would be honest in his dealings with clients, vendors, peers, and the courts. We agree with the Hearing Committee that Respondent has not met his burden. To the contrary, Respondent's behavior since his disbarment confirms that he cannot be trusted to exercise the honesty or decorum expected of attorneys.

### (4) *The Attorney's Present Character*

Respondent did not offer any witnesses willing to testify that he had the character traits expected of an attorney. He submitted several letters attesting to his moral character, but all but one of these letters were prepared between 1984 and 1989, apparently as exhibits in Respondent's first unsuccessful attempt to win reinstatement to the Maryland Bar. Because Respondent failed to introduce any current evidence of good character, and as the record includes ample evidence of questionable character on his part, we agree with the Hearing Committee that Respondent has failed to meet his burden on this *Roundtree* factor.

### (5) *The Attorney's Present Qualifications and Competence to Practice Law*

Respondent cites his *pro se* litigation of cases arising from his operation of Executive Suite to demonstrate his qualifications and competence to practice law. In *Molovinsky*

*v. The Fair Employment Council of Greater Washington,* Respondent lost a $79,000 judgment and failed properly to preserve three issues for appellate review. 683 A.2d at 142–43. In *Molovinsky v. Henneberry, supra,* Respondent lost a motion for summary judgment, apparently oblivious to the fact that his contracts would be held void and unenforceable if he were operating a business in the jurisdiction without the appropriate license. And in *Molovinsky v. The Monterey Cooperative, Inc., et al.,* 689 A.2d 531 (D.C.1996), Respondent attempted to relitigate a claim he had settled and dismissed with prejudice. The Court upheld the trial court's ruling that the suit was barred by *res judicata* and the statute of limitations.

It clearly is not apparent from the handling of his own legal matters that Respondent can be trusted to handle those of others. He has taken no continuing legal education courses in the last two years. He offered no testimony from practitioners who could attest to his competence. Moreover, Respondent offered no documentary evidence that he subscribes to or has access to legal periodicals of any kind.

\* \* \* \* \* \*

Accordingly, the petition for reinstatement is

*Denied.*