*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-BG-0844

IN RE DANA W. JOHNSON, RESPONDENT.

A Disbarred Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 420592)

On Report and Recommendation
of Hearing Committee Number Two
(Disciplinary Docket No. 2023-D032)
(Board Docket No. 23-BD-016)

(Submitted September 23, 2025                    Decided October 23, 2025)

*Dana W. Johnson*, pro se.

*Julia L. Porter*, Deputy Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, and *Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of the Disciplinary Counsel.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and SHANKER, *Associate Judges*.

PER CURIAM: The Court of Appeals of Maryland disbarred attorney Dana W. Johnson in 2001 after he "repeatedly engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation" and violated multiple ethical rules, including those prohibiting conflicts of interest and conduct prejudicial to the administration of justice. *Att'y Grievance Comm'n v. Johnson*, 770 A.2d 130, 151 (Md. 2001). Our

court reciprocally disbarred him in 2002. *ln re Johnson*, 810 A.2d 917 (D.C. 2002) (per curiam). Mr. Johnson now petitions for reinstatement in our bar. We adopt the Hearing Committee's recommendation and deny his petition.

## I. The Process for Seeking Reinstatement in the D.C. Bar

An attorney who has been disbarred in the District of Columbia may seek reinstatement after "five years from the effective date of the disbarment." D.C. Bar R. XI, § 16(a). The disbarred attorney initiates the process by filing a petition with the Executive Attorney of the D.C. Board on Professional Responsibility alleging their eligibility and fitness to be reinstated. *Id.* § 16(d); Board Pro. Resp. R. 9.1(c). The Board then refers the petition to the Office of Disciplinary Counsel, which conducts an investigation and determines whether it will contest the petition. D.C. Bar R. XI, § 16(e); *see* Board Pro. Resp. R. 9.5.[1]

If Disciplinary Counsel does not contest the petition, it submits a report to this court stating "why [it] is satisfied that the attorney meets the criteria for reinstatement," accompanied by the reinstatement petition and the court order that disbarred the attorney. D.C. Bar R. XI, § 16(e); Board Pro. Resp. R. 9.6(a). We

---

[1] The Board, either sua sponte or on the recommendation of Disciplinary Counsel, can dismiss the petition if "the attorney is not eligible for reinstatement" or if "the petition is insufficient or defective on its face." D.C. Bar R. XI, § 16(d)(1); *see* Board Pro. Resp. R. 9.4.

then grant the petition, deny the petition, or request a recommendation from the Board concerning reinstatement. D.C. Bar R. XI, § 16(e); *see In re Sabo*, 49 A.3d 1219, 1222 (D.C. 2012) (describing the process for an uncontested petition).

If Disciplinary Counsel contests the petition, the Executive Attorney schedules a hearing at which the attorney seeking reinstatement must show by "clear and convincing evidence" that they "ha[ve] the moral qualifications, competency, and learning in law required for readmission," and that their "resumption of the practice of law . . . will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C. Bar R. XI, § 16(d)(1). To determine whether an attorney meets those requirements, the Hearing Committee considers "(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct"; (3) the attorney's post-discipline conduct, "including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law." *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985). These are known as the "*Roundtree* factors."

The Hearing Committee then submits its findings of fact and recommendation on the petition to this court, D.C. Bar R. XI, § 16(d)(2); *see* Board Pro. Resp.

R. 9.7(e), and we "schedule the matter for consideration," D.C. Bar R. XI, § 16(d)(2).[2] We apply the same test as the Hearing Committee and determine, using the *Roundtree* factors, whether the petitioner has carried their burden of proving by clear and convincing evidence that reinstatement is warranted under D.C. Bar R. XI, § 16(d)(1). In so doing, we defer to the Hearing Committee's findings "unless they are unsupported by substantial evidence [in the] record." *In re Mba-Jonas*, 118 A.3d 785, 787 (D.C. 2015) (per curiam) (quoting *In re Samad*, 51 A.3d 486, 495 (D.C. 2012) (per curiam)). And while the ultimate decision on the petition rests "entirely with this court," we place "great weight" on the Hearing Committee's recommendation. *In re Sabo*, 49 A.3d at 1224 (citation modified).

## II. Factual Background and Procedural History

In 2001, Mr. Johnson was disbarred in Maryland for violating Maryland Attorneys' Rules of Professional Conduct 1.7(b) (conflict of interest); 3.3(a)(1) (candor toward the tribunal); 5.5(a) (unauthorized practice of law); 7.1 (communications concerning a lawyer's services); 7.5(a) and (b) (firm names and letterheads); and 8.4(a) (violating or attempting to violate the rules of professional conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or

---

[2] As with an uncontested petition, at our discretion, we may ask the Board for its recommendation on the petition. D.C. Bar R. XI, § 16(d)(2).

misrepresentation), and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice). *Johnson*, 770 A.2d at 150-52. Among other misconduct, Mr. Johnson practiced law in Maryland despite lacking a license there, filed a bankruptcy petition on behalf of his clients without their knowledge, and forged the clients' signatures and another lawyer's signature. *Id.* at 134-37.

More specifically, although briefly: Despite being unlicensed in Maryland, Mr. Johnson purported to represent Rebecca and Arturo Bantug in connection with foreclosure proceedings against a house they owned in Maryland. The Bantugs wanted to sell the house because they were behind in payments on two mortgages on the property and they were moving to the Philippines. Mr. Johnson told Ms. Bantug that he wanted to buy the property. In the contract of sale, Mr. Johnson agreed to, among other things, pay the Bantugs $6,000, assume and pay all the mortgages on the property, and pay all the penalties accruing on the debts.

Mr. Johnson moved into the house but he did not bring the mortgages current. When a mortgagee bank sought to foreclose on the property, Mr. Johnson filed a bankruptcy petition in the Bantugs' names without their permission. In the bankruptcy petition, Mr. Johnson forged the signatures of both Bantugs as well as his law partner, whom he listed as counsel for the Bantugs. Mr. Johnson also wrote to counsel for the bank, purportedly as the Bantugs' counsel, demanding that the

bank cease any collection efforts and cancel the foreclosure because of the bankruptcy; filed a notice of bankruptcy in the foreclosure action, again forging his partner's signature as counsel for the Bantugs; and filed other pleadings in the bankruptcy action, forging the signatures of the Bantugs and the law partner without their authorization and making numerous false statements in the pleadings.[3]

Following Mr. Johnson's disbarment in Maryland based on this conduct, our court imposed reciprocal discipline and disbarred Mr. Johnson from the practice of law in the District of Columbia in 2002, noting that, "[a]mong other things, [Mr.] Johnson filed a bankruptcy petition without the knowledge or consent of his putative clients, forging signatures and fabricating information in the process, in order to forestall a mortgage foreclosure on property he had contracted to purchase." *ln re Johnson*, 810 A.2d at 917.

---

[3] The Hearing Committee found that Mr. Johnson committed other unadjudicated pre-disbarment misconduct, but it also expressly recommended that this court could deny Mr. Johnson's reinstatement request "even without considering the unadjudicated misconduct." Because we find it unnecessary to consider that conduct in denying reinstatement, we do not describe it here and do not address Mr. Johnson's arguments about reliance on unadjudicated conduct, which comprise the bulk of his brief on appeal.

In 2023, Mr. Johnson filed a petition for reinstatement in the D.C. Bar.[4] Disciplinary Counsel opposed Mr. Johnson's petition, rendering it a "contested petition" under D.C. Bar R. XI, § 16(d). The Board's Hearing Committee Number Two convened for a hearing on the petition in April 2024. After considering the testimony and exhibits presented, the Hearing Committee filed a comprehensive report and recommended that this court deny the petition because Mr. Johnson had not satisfied the fitness qualifications set forth in D.C. Bar R. XI, § 16(d)(1)(a) and in *In re Roundtree*.

Mr. Johnson filed exceptions to the Hearing Committee's report and recommendation and then briefed the case in this court.

### III.   Analysis

Finding substantial evidence in the record to support the Hearing Committee's findings of fact, we adopt those findings and conclude that Mr. Johnson has not shown, under D.C. Bar R. XI, § 16(d) and the *Roundtree* factors, that he should be reinstated. We address each *Roundtree* factor in turn.

---

[4] Beginning in 2012, Mr. Johnson filed multiple other petitions for reinstatement, all of which the Board dismissed for various deficiencies. Those prior petitions for reinstatement are not before this court.

First, we consider the nature and circumstances of Mr. Johnson's misconduct. *In re Roundtree*, 503 A.2d at 1217. "The first *Roundtree* factor is of primary importance in considering the petition for reinstatement." *In re Alamgir*, 282 A.3d 81, 82 (D.C. 2022) (per curiam) (citation modified). "When the disbarred attorney's misconduct is closely bound up with the disbarred attorney's role and responsibilities as an attorney, we apply heightened scrutiny to the other *Roundtree* factors." *Id.* (citation modified).

Mr. Johnson's conduct—involving, among other things, engaging in the unauthorized practice of law, filing a fictitious bankruptcy petition in order to forestall foreclosure for his own benefit, and making misrepresentations in pleadings—was unquestionably closely bound up with his role and responsibilities as an attorney, and we agree with the Hearing Committee that it was "undeniably serious." We therefore view the remaining *Roundtree* factors with heightened scrutiny; indeed, we conclude that Mr. Johnson's "egregious" misconduct "weighs heavily against reinstatement." *In re Fogel*, 679 A.2d 1052, 1055 (D.C. 1996). "In light of that misconduct, [Mr. Johnson] would have needed to present a truly compelling case in order to establish by clear and convincing evidence that he should be reinstated." *In re Alamgir*, 282 A.3d at 85. Mr. Johnson has not made such a showing.

With respect to the second and third *Roundtree* factors, we agree with the Hearing Committee that Mr. Johnson has not demonstrated recognition of the seriousness of his misconduct or taken steps to remedy past wrongs and prevent future ones. Substantial evidence supports the Hearing Committee's findings that Mr. Johnson, among other things, denied that his representation of the Bantugs in connection with the foreclosure while simultaneously entering into a contract of sale to purchase the Bantug' home himself gave rise to a conflict of interest; claimed that he could sign for the Bantugs because he possessed delegated authority; and asserted that he was unfairly targeted and denied due process in the Maryland disciplinary proceedings. Mr. Johnson also has not provided "examples of post-discipline conduct from which his personal growth can be reasonably inferred." *In re Yum*, 187 A.3d 1289, 1292 (D.C. 2018) (per curiam); *see In re Roundtree*, 503 A.2d at 1217.

As to the fourth *Roundtree* factor, Mr. Johnson presented two character witnesses—one of which was his brother—but they "knew too few details of [Mr. Johnson's] misconduct to give their testimony much weight." *In re Alamgir*, 282 A.3d at 86; *see In re Cleaver-Bascombe*, 220 A.3d 266, 269-71 (D.C. 2019) (per curiam) (denying reinstatement petition where attorney's character witnesses "were not familiar with the details of [attorney's] original misconduct and/or were not aware of [attorney's] false bankruptcy filings"). Mr. Johnson's brother, moreover,

minimized the seriousness of Mr. Johnson's conduct, stating that Mr. Johnson "trusted" Ms. Bantug and tried to "help her in a sense."

Finally, we agree with the Hearing Committee that Mr. Johnson failed to present meaningful, let alone compelling, evidence of his present qualifications and competence to practice law, including evidence that he has "kept up with current developments in the law," *In re Roundtree*, 503 A.2d at 1218 n.11, or "furthered his legal education through continuing legal education programs," *In re Turner*, 915 A.2d 351, 356 (D.C. 2006) (per curiam). "[T]he longer the suspension, the stronger the showing that must be made of the attorney's present competence to practice law." *In re Roundtree*, 503 A.2d at 1218 n.11. Mr. Johnson had been suspended for over twenty years when he filed the current petition for reinstatement, but his only evidence of having kept up with developments in the law was an exhibit containing U.S. Federal Labor Relations Authority training materials addressing Litigating Unfair Labor Practices Charges, Duty of Fair Representation, and Collective Bargaining. We agree with the Hearing Committee that this was insufficient to meet Mr. Johnson's burden.

In sum, we conclude that Mr. Johnson failed to demonstrate by clear and convincing evidence that he is fit to be reinstated. We therefore deny Mr. Johnson's petition for reinstatement.

### **IV.** **Conclusion**

For the foregoing reasons, we deny Mr. Johnson's petition for reinstatement.

*So ordered.*