**In re James E. BROWN, Petitioner.**

**No. 90–SP–243.**

District of Columbia Court of Appeals.

Argued Sept. 18, 1991.
Decided Dec. 4, 1992.

W. Alton Lewis, for petitioner.

Elizabeth J. Branda, Asst. Bar Counsel, for respondent, the Office of Bar Counsel. Frederick B. Abramson, Bar Counsel at the time the brief was filed, and Samuel McClendon, Asst. Bar Counsel at the time the brief was filed, were on the brief, for respondent.

Before FERREN, TERRY and WAGNER, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks to be reinstated as a member of the bar of the District of Columbia after having consented to disbarment in 1981.[1] The hearing committee that held hearings on the petition for reinstatement, the Board on Professional Responsibility, and Bar Counsel all oppose reinstatement. The sole issue before this court[2] is whether petitioner has shown by clear and convincing evidence that he is fit to resume the practice of law. We hold that petitioner has not met this burden because, in testifying before the hearing committee, he failed to admit that he had deliberately deceived the Virginia State Bar Disciplinary Board in a related proceeding. Accordingly, we deny the petition for reinstatement.

---

1. D.C. Bar Rule XI, § 12(a) provides in part:
 An attorney who is the subject of an investigation or a pending proceeding based on allegations of misconduct may consent to disbarment, but only by delivering to Bar Counsel an affidavit declaring the attorney's consent to disbarment and stating:

 \* \* \* \* \* \*

 (4) That the attorney submits the consent because the attorney knows that if disciplinary proceedings based on the alleged misconduct were brought, the attorney could not successfully defend against them.

2. Under D.C. Bar Rule XI, § 16(a), "[a] disbarred attorney ... shall not resume the practice of law until reinstated by order of [this] Court."

## I

Petitioner Brown consented to disbarment in August 1981 after Bar Counsel charged him with disciplinary violations in three separate probate matters. In the first matter, involving the estate of Harold C. Ensley, Brown failed to report two payments to the estate and made payments to himself and to heirs of the estate without court approval. In the second matter, involving the estate of Logan L. Glascoe, Jr., Brown settled a wrongful death case on behalf of the estate for $15,000. Brown then took $5,000 of the award as his fee, again without court approval. A lawsuit was filed against the administratrix, whom Brown represented, and when a judgment of $8,000 was entered against her, Brown satisfied that judgment from another estate (the estate of Frances F. Keith) which he was handling at the time. In the third matter, involving the Keith estate, Brown sold certain real property on behalf of the estate for $14,000 and took $4,389.92 as his fee, without obtaining the court's permission. Brown then used an additional $8,000 taken from Keith estate funds to satisfy the judgment against the administratrix of the Glascoe estate. To conceal this misappropriation, Brown submitted doctored bank records to the court's Auditor–Master.[3]

As our rule requires in a consensual disbarment case,[4] Brown submitted an affidavit containing an admission of the alleged misconduct, but only with respect to his handling of the Ensley estate. The affidavit stated that Brown "prematurely and without the Court's approval distribute[d] the assets of the estate and failed to report to the Court the sum of $255.00 representing an overpayment of the estate's expenses."

In September 1982 the Virginia State Bar Disciplinary Board ("the Virginia Board") held a hearing ("the Virginia hearing") to consider reciprocal disciplinary action. Because our rule limits the public record of a consensual disbarment case to this court's order of disbarment, the only evidence before the Virginia Board concerning Brown's disbarment in the District was our order and Brown's affidavit admitting his mishandling of the Ensley estate.[5] The Virginia Board was not made aware of Brown's alleged misconduct as to the Glascoe and Keith estates. The Virginia Board declined to impose the reciprocal discipline of disbarment but instead ordered that Brown be reprimanded.[6] Some time later, after the Virginia Board learned that District of Columbia Bar Counsel had brought other charges beyond the one based on the misappropriation of $255 from the Ensley estate, it initiated another proceeding against Brown, and in January 1984 Brown was disbarred in Virginia for knowingly

---

3. As a result of Brown's conduct in handling these three estates, Bar Counsel charged him with violating several disciplinary rules, including DR 1–102(A)(3), by engaging in illegal conduct involving moral turpitude through the submission of false reports and information to the court; DR 1–102(A)(4), by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation by submitting false reports to the court; DR 1–102(A)(3), by embezzling estate funds; DR 9–102(A), by failing to preserve the identity of funds and by commingling funds; and DR 1–102(A)(5), by engaging in conduct prejudicial to the administration of justice, *viz.*, the embezzlement.

4. *See* D.C. Bar Rule XI, § 12(a)(2)–(4).

5. D.C. Bar Rule XI, § 12(c) states that the affidavit "shall not be publicly disclosed or made available for use in any other proceeding *except* by order of the Court or upon written consent of the attorney." It appears, however, although the record is not entirely clear, that Brown himself provided a copy of the affidavit to the Virginia Board.

6. Although Virginia Bar Counsel and the members of the Virginia Board were puzzled that Brown had surrendered his District of Columbia license over an allegation of misappropriation of only $255, Brown did not reveal the full charges brought against him by District of Columbia Bar Counsel. When a Virginia Board member asked whether there were any other charges pending against Brown at the time the Ensley estate charges were pending, Brown answered, "No." At the end of the hearing, Virginia Bar Counsel requested that the record be kept open for fifteen days to permit him "to probe further" into why Brown had consented to disbarment over "a violation of technical rules."

making a false statement under oath.[7]

In 1987 Brown filed with the Board on Professional Responsibility (BPR) a petition for reinstatement in the District of Columbia Bar.[8] The BPR referred the petition to a hearing committee, which recommended, after a hearing, that Brown be reinstated. The BPR accepted the hearing committee's findings and recommended that this court grant Brown's petition. However, on review of the whole record, this court remanded the case to the BPR "for reconsideration in light of petitioner's disbarment in Virginia and in light of petitioner's conduct in the *Glascoe* and *Keith,* as well as *Ensley,* matters." *In re Brown,* No. 88–1406, Order of December 1, 1988 (unpublished).

The BPR in turn sent the case back to the hearing committee, which held another evidentiary hearing in February 1989. During that proceeding ("the remand hearing") Bar Counsel introduced a transcript of the Virginia hearing, and Brown testified. The hearing committee thereafter issued a report recommending that Brown's petition for reinstatement be denied,[9] and the BPR adopted the hearing committee's recommendation. The case is now back before us for a final ruling on Brown's petition.

7. The Virginia Board found that the following testimony by Brown at the Virginia hearing constituted deliberate misrepresentation:

> Q. Let me ask you this, Mr. Brown. Were there any other charges pending [in the District of Columbia] at the time this one [the Ensley matter] was?
> A. No.
> Q. Nothing else?
> A. No.

8. After at least five years have elapsed from the effective date of disbarment, a disbarred attorney "not otherwise ineligible for reinstatement" may file a petition for reinstatement. D.C. Bar Rule XI, § 16(a).

9. The hearing committee found:

> Petitioner clearly intended to deceive the Virginia Bar into believing that the misconduct which resulted in his consensual disbarment in the District [of Columbia] was minor and only pertained to his mishandling of the *Ensley* estate. However, when questioned by Bar

## II

 In *In re Roundtree,* 503 A.2d 1215 (D.C.1985), we identified five factors that must be considered whenever a suspended or disbarred attorney seeks reinstatement as a member of the bar:

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*Id.* at 1217 (citations omitted). We then said that "[i]n any reinstatement case, primary emphasis must be placed on the factors most relevant to the grounds upon which the attorney was suspended or disbarred." *Id.* In this case we shall focus our attention primarily on the second of the *Roundtree* factors, though we shall touch on all of them.[10]

Brown maintains that acknowledging the seriousness of his misconduct in the single probate matter to which he admitted when he consented to disbarment satisfied *Roundtree's* second element. He argues that *Roundtree* does not require an attor-

Counsel and the Committee members regarding the Virginia proceeding, Petitioner continually insisted that he was not trying to deceive the Virginia board. ˋ Petitioner's entire testimony regarding this matter was unpersuasive and not credible.

10. With respect to the first *Roundtree* factor, we conclude that "although petitioner committed several violations of the disciplinary rules, they were not so serious as to make [him] permanently ineligible for readmission to the Bar, so long as [he] demonstrates a willingness and an ability to correct past mistakes and avoid future ones." *In re Roundtree, supra,* 503 A.2d at 1217. Brown was disbarred for misappropriation, but the wider charges in Bar Counsel's complaint included allegations of dishonesty, moral turpitude, intentional failure to pursue the lawful objectives of his clients, commingling funds, and concealing information that he was required to disclose. We accept the BPR's conclusion that, even if all of these charges had been proven by Bar Counsel, they would not be a permanent bar to Brown's reinstatement.

ney who has consented to disbarment to admit, as a condition of reinstatement, his guilt of other charges of misconduct which which were originally brought but never fully prosecuted by Bar Counsel, even though the attorney may have no legal or factual basis for contesting those charges. This argument does have some appeal, but it ignores the obvious fact that the unresolved but undisputed charges stand as a potential bar to reinstatement because they could serve at any time as the basis for new disciplinary proceedings.

Although we find this a troublesome issue, we need not resolve it in this case because Brown has conceded that he recognizes the seriousness of his misconduct with respect to all three estates. Brown has made a number of statements acknowledging that he committed serious disciplinary violations in handling not only the Ensley estate but the Glascoe and Keith estates as well. At the remand hearing, Brown was asked by his attorney, "Do you fully recognize the misconduct in all three of those estates?" Brown replied, "Yes, I do." At the first hearing held by the District of Columbia hearing committee in March 1988, Brown testified as follows:

> One of the things the committee members had serious questions about was, did I recognize the seriousness of the offense of which I was engaged in, and my response to that question is that no one that I can ever imagine would not be as remorseful and recognize the seriousness of what has happened than I have been over these past six and part years. I did some very bad things.... But to say you're sorry, I don't think it's enough. I don't know what to say. I did it, and I don't know what to say.

Finally, in an affidavit submitted to the hearing committee before its first hearing,

Brown stated, "There are [sic] no explanation for my indiscretion other than the fact that I handled these three cases incompetently, and in my efforts to cover up for such incompetency, I engaged in misconduct that was appropriate for disbarment." These statements support the hearing committee's conclusion that Brown recognized "the seriousness of the misconduct which prompted him to resign from the Bar."

What led the BPR and the hearing committee to recommend against reinstatement, however, was the hearing committee's finding that Brown was not "straightforward and honest" in his testimony at the remand hearing in 1989 about the 1982 proceedings in Virginia and that he "clearly intended to deceive" the Virginia Board. See note 9, *supra*. The BPR concluded:

> Petitioner is in a position—with a violation of dishonesty—wherein he must prove he is an honest person. To be less than strictly candid, to equivocate with respect to the wrongdoing, to fail to be straightforward in an explanation of past dishonest conduct is fatal to this burden.

We are satisfied that the record supports the hearing committee's finding and the Board's conclusion. *See* D.C. Bar Rule XI, § 9(g) ("the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record").

As in any reinstatement case, Brown bears the burden of proving by clear and convincing evidence that he is "rehabilitated and a fit person to resume the practice of law." *In re Roundtree, supra,* 503 A.2d at 1218 (citation and internal quotation marks omitted); *accord, In re Stanton,* 532 A.2d 95, 96 (D.C.1987); *In re Harrison,* 511 A.2d 16, 18 (D.C.1986); *see* D.C. Bar Rule XI, § 16(d) (defining burden of proof).[11] Although Brown ap-

---

11. Although we have not elaborated on the requirements of "rehabilitation," other courts have. The Maryland Court of Appeals has said that in considering a petition for reinstatement, it

> seek[s] assurance that those traits which led to the petitioner's disbarment no longer exist and, indeed, that the petitioner is a changed individual, having a full appreciation for his

mistake and a new determination to adhere to the high standards of integrity and legal competence which this Court requires.

*In re Barton,* 291 Md. 61, 64, 432 A.2d 1335, 1336 (1981); *see also In re Peterson,* 274 N.W.2d 922, 926 (Minn.1979) ("rehabilitation and reformation demand that the individual perceive and reject the wrongfulness of his conduct and show

pears to appreciate fully the seriousness of the acts that led to his disbarment, his duplicitous conduct during the Virginia hearing in 1982 and his efforts during the remand hearing in 1989 to downplay that conduct plainly demonstrate a lack of rehabilitation. During the remand hearing Brown equivocated about whether he intended to deceive the Virginia Board. At times he claimed he did not intentionally mislead the Virginia Board into thinking that he was charged with only one disciplinary violation in the District; at other times, however, he admitted intentionally misleading the Virginia Board. Yet even on these occasions Brown asserted that he misunderstood the Board's questions, that he was not paying enough attention, and that his failure to hire an attorney to represent him led to misstatements. The BPR concluded, with ample evidentiary support (set forth in detail in the BPR's report), that "[n]owhere in this record does [Brown] provide a thoughtful, reflective recognition of his misconduct in Virginia."

In order to prove that he is rehabilitated and a fit person to resume the practice of law, Brown must openly admit what is obvious from the record: that he deliberately deceived the Virginia Board in the 1982 hearing. Just as an alcoholic who refuses to acknowledge his illness cannot start on the road to recovery, Brown cannot prove that he is rehabilitated and fit for readmission to the bar without admitting that he misled the Virginia Board.[12] The litany of excuses that he gave to the hearing committee will not suffice.

As to the third *Roundtree* factor, "the attorney's conduct since discipline was im-posed, including the steps taken to remedy past wrongs and prevent future ones," 503 A.2d at 1217, the BPR noted that Brown "has not been idle during his period of disbarment." He has earned a master's degree, authored two textbooks on accounting and automation, taught several classes, and taken a course in estate planning and professional responsibility. Nevertheless, the BPR agreed with the hearing committee's conclusion that because Brown had "failed to adequately address the dishonest conduct which led to his disbarment, given that most of the disciplinary violations contained in the original complaint were the result of [his] fraudulent and dishonest conduct," he had not demonstrated "a willingness and ability to correct past mistakes and avoid future misconduct." The BPR ruled, with respect to the third *Roundtree* factor, that "the positive steps [Brown] has taken ... are insufficient to meet his burden for reinstatement in light of his failure to adequately recognize and address his dishonest conduct in Virginia." We find no error in this ruling, or in the similar ruling that Brown, "by his refusal to reflectively and thoughtfully recognize the dishonesty of his conduct in Virginia, has failed to meet his burden in establishing that he has the moral character and integrity [the fourth *Roundtree* factor] to resume the practice of law in the District of Columbia."[13]

### III

D.C. Bar Rule XI, § 16(g) provides that when a petition for reinstatement is denied, the petitioner may not file another application until one year has passed.

in some positive way that he now has a correct sense of professional responsibility").

12. We do not mean to imply, of course, that Brown is or has ever been an alcoholic. There is no evidence whatever to that effect in the record.

13. With respect to the fifth *Roundtree* factor, the BPR concluded that the evidence of Brown's present competence to practice law was insufficient because of his "inevitable loss of skills from such a lengthy period away from the legal profession, plus the deficiencies shown to exist at the time [he] was disbarred...." We need not decide today whether this conclusion was correct. If Brown submits another petition for reinstatement, however, evidence showing specifically how he has maintained his competence to practice law would probably be more useful than what he has presented so far. *See In re Harrison, supra,* 511 A.2d at 19 (attorney kept up with developments in the law by reading legal publications and maintaining regular contact with staff members of various government agencies where he had practiced before his suspension); *In re Roundtree, supra,* 503 A.2d at 1218 (attorney participated in continuing legal education programs and acquired relevant computer skills).

Brown claims that he has been prejudiced by delay in his reinstatement proceedings because it took the hearing committee seven months to complete its report and recommendation.

This court has held that when a delay occurs in disciplinary proceedings, it is not appropriate for the BPR to dismiss the charges against an attorney; there is nothing in such proceedings comparable to the right to a speedy trial in a criminal case. *In re Williams*, 513 A.2d 793, 798 (D.C. 1986). We have recognized, however, that a delay caused by no fault of the attorney is a mitigating factor which may dictate a lesser sanction than would otherwise be imposed. *See In re Schneider*, 553 A.2d 206, 212 (D.C.1989) (fact that the disciplinary proceeding had "dragged on into its sixth year" was one of the "significant mitigating factors" influencing the choice of a sanction); *In re Hessler*, 549 A.2d 700, 716 (D.C.1988) (lengthy delay was one of the factors "having a mitigating effect that justifies a sanction nearer the lesser end of the permissible range for the type of misconduct involved"). In keeping with this line of cases, the BPR has recommended that if we deny Brown's petition for reinstatement, we authorize him to submit a new petition six months from the date of that denial. We accept the BPR's recommendation.

For the reasons stated in this opinion, the petition of James E. Brown for reinstatement in the bar is denied. After six months have elapsed from the date of this opinion, Mr. Brown may file a new petition.

*It is so ordered.*