In re David D. REYNOLDS, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 04–BG–452.

District of Columbia Court of Appeals.

Submitted Dec. 3, 2004.
Decided Feb. 10, 2005.

---

Before TERRY, Associate Judge, and BELSON and NEBEKER, Senior Judges.

PER CURIAM.

On December 14, 2000, we suspended petitioner, David D. Reynolds, from practicing law for a period of six months with the requirement that he demonstrate his fitness to resume the practice of law as a prerequisite to reinstatement. *In re Reynolds,* 763 A.2d 713 (D.C.2000). Before us now is petitioner's request for reinstatement. *See* D.C. Bar R. XI, § 16(d) (2003). A hearing was conducted before a Hearing Committee which recommended to the Board on Professional Responsibility that the petition be denied. The Board in turn recommends that this court deny the petition because petitioner has not demonstrated by clear and convincing evidence that he is fit to resume practicing law. We agree with the Board and therefore deny his petition for reinstatement. *See id.* § 16(f)..

To gain reinstatement, petitioner must establish by clear and convincing evidence that (1) he has the "moral qualifications, competency, and learning in law required for readmission," and (2) his resumption of the practice of law "will not be detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest." D.C. Bar R. XI, § 16(d). We consider these factors in light of the criteria set forth in *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985):(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law. Neither Bar Counsel nor petitioner filed objections or exceptions to the Board's report. "In such circumstances our review of the Board's recommendation is 'especially deferential.'" *In re Patkus,* 841 A.2d 1268, 1268 (D.C.2004) (citing *In re Delaney,* 697 A.2d 1212, 1214 (D.C. 1997)).

We note that although the burden is on petitioner to demonstrate by clear and convincing evidence that he has satisfied the *Roundtree* factors, he did not produce any witnesses or offer any exhibits to support his petition. Petitioner was originally disciplined for misdemeanor convictions in Virginia on two counts of driving while intoxicated, one count of eluding a police officer, and one count of hit and run. *In re Reynolds,* 763 A.2d at 713. His criminal conduct was accompanied by "an extended pattern of alcohol abuse over more than a decade." *Id.* at 714. Petitioner's conduct was certainly serious and, as the Board notes in its report and rec-

ommendation, he has not proven by clear and convincing evidence that he recognizes the seriousness of that conduct. Petitioner's statement in his Post–Hearing Reply Brief that he acknowledges "the seriousness of his offenses in the eyes of the law" falls short of demonstrating that he has a full understanding of the nature and ramifications of his conduct. Moreover, petitioner produced no evidence to suggest that his conduct has improved since he was disciplined. In his petition, he claims that he has not consumed an alcoholic beverage in over three years. However, his claim is belied by the testimony of Dr. Stejskal, a clinical psychologist, who testified that on the one occasion he met with petitioner, he appeared to be intoxicated. Finally, petitioner failed to produce any witnesses to testify to his present character, and failed to provide any documentation of his present qualifications and competence to practice law.

In light of our standard of review, the Board's unchallenged report and recommendation, and the record herein, we conclude that petitioner has failed to establish by clear and convincing evidence his fitness to resume the practice of law. We therefore accept the Board's recommendation for the reasons stated in its report, which is appended to this opinion, and deny the petition for reinstatement.

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: DAVID D. REYNOLDS, Petitioner.

Bar Docket No. 37-01

1. In *In re Reynolds*, 763 A.2d 713 (D.C.2000) (per curiam), the suspension was imposed *nunc pro tunc* to June 28, 1999, the date on

## REPORT AND RECOMMENDATION OF

### THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter comes to the Board on Professional Responsibility ("the Board") from Hearing Committee Number Seven (the "Committee"), which concluded that Petitioner David D. Reynolds' Petition for Reinstatement should be denied. Bar Counsel does not except to the Committee's recommendation. Petitioner excepted, but filed no brief in support of his exceptions. In keeping with Board Rule 13.4(a), there was no oral argument. Upon review of the record, the Board agrees with the Committee and recommends that the Petition for Reinstatement be denied.

### I. PROCEDURAL HISTORY

On January 30, 2001, Petitioner (who had been suspended with a fitness requirement on December 14, 2000)[1] filed a Petition for Reinstatement and the required Restatement Questionnaire. Bar Counsel filed an Answer to the Petition on March 12, 2001. A hearing was scheduled for sometime in April 2001, and a pre-hearing conference took place on March 26, 2001. *See* Transcript of Proceedings, dated March 26, 2001 ("Tr.I"). At that time, the parties sought a continuance because Bar Counsel had requested, and Petitioner had agreed to undergo, an evaluation by a psychologist, but the evaluation had not taken place; Petitioner had been in a nursing home recovering from an injury on the date the evaluation was to have taken place. Tr. I at 3–4. The Hearing Committee Chair granted the continuance and advised the parties that the hearing would be scheduled to take place within a week

which Petitioner had filed the affidavit required by D.C. Bar R. XI, § 14(g).

or two of receipt of the doctor's report. Tr. I at 7. On May 10, 10, 2001, Bar Counsel filed a motion to dismiss the Petition for Reinstatement because Petitioner had not yet made an appointment for the evaluation by the psychologist. Petitioner did not respond to the motion. On June 19, 2001, the Hearing Committee Chair issued an Order requiring Petitioner to make an appointment with the psychologist within 30 days and stating that any failure in this regard would result in dismissal of the petition.

On July 23, 2001, Petitioner requested an additional 30-day extension of time in which to make his appointment with the psychologist. Respondent argued that he had attempted to contact the doctor on several occasions, but, because Petitioner was homeless and had no telephone number at which the doctor could return his calls, they were having difficulty getting in touch. Bar Counsel opposed the motion. On July 25, 2001, the Hearing Committee Chair issued an order requiring Petitioner to make his appointment by August 24, 2001, and to advise Bar Counsel of the date of the appointment by August 31, 2001. The Chair noted that failure to so advise Bar Counsel would result in a recommendation that the Petition be denied.

On August 27, 2001, Petitioner filed notice of his having made an appointment with the psychologist for September 10, 2001. On November 9, 2001, Bar Counsel advised the Hearing Committee of receipt of the doctor's report. On December 6, 2001, the Hearing Committee Chair issued an order setting the hearing for January 14, 2002. Bar Counsel timely served her proposed exhibits.

The hearing took place as scheduled. *See* Transcript of Proceedings, dated January 14, 2002 ("Tr.II"). [Petitioner] appeared *pro se*. He did not offer any exhibits. Bar Counsel offered Bar Exhibits ("BX") 1–13 into evidence. [Petitioner] objected to several of the documents on relevance grounds, which objection was denied. Tr II at 161–63. BX 1–13 were then received into evidence. Tr. II at 163. The only witnesses were Petitioner, *see* Tr. II at 112–160, and William J. Stejskal, Ph.D., who testified out of turn by agreement of the parties, *see* Tr. II at 6–111. Bar Counsel had called another witness via subpoena, but that witness did not testify because she was the author of a document entered into evidence (BX 11) and her testimony would merely be a reiteration of statements made in the document. *See* Tr. II at 160. At the time, Petitioner made no objection to the Hearing Committee's consideration of the exhibit without the opportunity for cross-examination. *See* Tr. II at 162 (Petitioner states his "primary objection was relevance" but articulated no other objections).

The parties filed their post-hearing briefs. The Hearing Committee issued its Report and Recommendation on May 21, 2002. On May 23, 2002, Bar Counsel advised the Board Office that she took no exception to the Hearing Committee's Report. On June 3, 2002, Petitioner advised the Board Office that he took exception to both the Hearing Committee's findings of fact and its recommendation. On June 28, 2002, Petitioner sent to the Board Office a motion for extension of time, seeking an additional week to file his objections to the Hearing Committee Report. Petitioner argued that his briefcase (containing the Hearing Committee Report) was stolen when Petitioner suffered a medical emergency and that he had just requested a new copy of the Report. Bar Counsel did not object to Petitioner's motion. On July 3, 2002, the Board's Executive Attorney advised Petitioner that his request for a week-long extension was granted and that he had until July 8, 2002, to file his brief

with the Board. By October 8, 2002, Petitioner had not filed anything with the Board and, as a result, the Board cancelled oral argument, pursuant to Board Rule 13.4(a). The Board has since reviewed the available record and makes the following findings and recommendation.

## II. *FINDINGS OF FACT*

The Board has reviewed and adopts the Findings of Fact made by the Committee which are set forth here with minor changes. Pursuant to Board Rule 13.7, the Board has included additional findings to provide context and further support of its conclusions.[2]

1. Petitioner was admitted to the District of Columbia Bar on April 3, 1995, and was assigned Bar Number 446190. BX 5 at 2 (Hearing Committee Report in BDN 506–97, issued on January 19, 2000).

2. Petitioner was convicted on May 1, 1998, in the Circuit Court of Arlington County, Virginia, on two counts of driving while intoxicated ("DWI"), one count of eluding, and one count of hit and run. He was sentenced on June 6, 1998, to 12 months on each of the counts, to run consecutively. HC Rpt. Finding 1.

3. On July 14, 1998, Bar Counsel filed a certified copy of the judgment of conviction with the District of Columbia Court of Appeals (the "Court"). On July 30, 1998, the Court ordered Petitioner suspended pursuant to D.C.Bar. R. XI, § 10(c), and directed the Board to institute formal disciplinary proceedings. BX 5 at 1.

4. Prior to these convictions, Petitioner had been convicted of DWI in 1984, 1987, 1990, and 1995. A fifth DWI charge had been dismissed the day following the 1995 conviction. Following the first three convictions, Petitioner had been required to receive treatment for alcohol abuse. The sentence on the 1995 conviction placed him on probation for two years, required that he complete an alcohol program as directed, limited Petitioner's driving [**to traveling**] to and from work and to and from the court and the probation officer, and ordered that he not use an automobile other than one with an interlock ignition device. HC Rpt. Finding 2.

5. The 1998 DWI convictions were based on arrests made in October 1996 and September 1997. Following the 1996 arrest, Petitioner was incarcerated for five months for violation of the 1995 sentencing order. Petitioner had failed to complete the alcohol abuse program as had been ordered, and had operated an automobile without the interlock device. When he was interviewed by the Probation Department for its investigative report, although Petitioner was plainly drunk at the time of the 1996 and 1997 arrests, he denied use of alcohol on either occasion. His arrest in September 1997 followed by only two weeks his completion of the five months incarceration. HC Rpt. Finding 3.

6. Petitioner was in jail on his 1998 sentence until December 9, 1999, when he was released on probation. HC Rpt. Finding 5.

7. While he was incarcerated, on May 25, 1999, Respondent filed a petition with the Virginia State Bar Disciplinary Board requesting leave to surrender his license to practice law in Virginia. BX 8 at 2. On May 26, 1999, the Virginia Board issued an order revoking Petitioner's license and striking his name from the Roll of Attorneys in Virginia. *Id.* Virginia considers

---

2. We cite to the record before the Hearing Committee for findings made by the Board. Findings made by the Hearing Committee will be cited to the Hearing Committee Report ("HC Rpt.").

such action the "[imposition] of public discipline." BX 8 at 1.

8. Petitioner's adjustment to parole supervision after his release was "unfavorable." BX 10 at 1. On January 5, 2000, he tested positive for alcohol. He was on court-ordered outpatient substance abuse treatment. On four occasions in January–February 2000, he refused to submit to urinalysis tests when ordered by his probation officer. HC Rpt. Finding 5.

9. Hearing Committee Number Two issued its Report and Recommendation in BDN 506–97 on January 19, 2000, finding that the 1998 convictions, in the context of the four previous convictions, showed a pattern of criminal acts that reflected adversely on Petitioner's fitness as a lawyer and therefore violated Rule 8.4(b).[3] BX 5 at 6; HC. Rpt. Finding 4.

10. On February 25, 2000, Petitioner tested positive for alcohol when meeting with his outpatient treatment counselor. He was then directed to enter and complete a detoxification program. He was in detoxification from February 26 to March 7, 2000. On March 10, 2000, Petitioner reported intoxicated to his substance abuse treatment program, and was shortly thereafter arrested for being drunk in public. On March 11, 2000, Petitioner re-entered detoxification and was taken to Phoenix House on March 20, 2000. On March 31, 2000, he absconded from Phoenix House. HC Rpt. Finding 5.

11. He returned the next day asking to be re-admitted. He was "obviously intoxicated," and tested positive for alcohol. BX 11 at 1. He also said he wanted to commit suicide. He was referred to Arlington Psychiatric Hospital. He was re-admitted to Phoenix House on April 10, 2000. His

probation officer warned him that he would return to jail if he did not complete the Phoenix House program. On April 19, 2000, Petitioner was sent to CVS to refill some prescriptions. He left his escort and went to a bar, saying that he wished to use the men's room. After about an hour he returned to Phoenix House, and was again tested positive for alcohol. As on numerous other occasions, he denied using alcohol. The probation officer was informed, and Petitioner was arrested again on April 20, 2000. HC Rpt. Finding 6.

12. Petitioner "was very resistant to receiving substance abuse treatment" at Phoenix House. BX 11 at 1. Petitioner's "attitude and behavior while at the Phoenix Program indicated a great deal of denial and resistance to recognizing himself as an alcoholic who is in need of treatment." BX 11 at 2; HC Rpt. Finding 7.

13. Petitioner was incarcerated for parole violations from April 20, 2000, to September 13, 2000, when the Parole Board determined that the evidence was insufficient to sustain the charged parole violations. BX 9 (Jenkins Affidavit ¶ 14); HC Rpt. Finding 8.

14. During the time of this incarceration, on May 8, 2000, the Board issued its report in BDN 506–97, in which it agreed that the proved pattern of law-breaking, and violation of probation which led to incarceration, were sufficient to establish a Rule 8.4(b) violation. HC Rpt. Finding 4.
15. The Court of Appeals [agreed and suspended Petitioner] on December 14, 2000, on the grounds stated by the Board. Quoting a concurring opinion in *In re Reynolds*, 649 A.2d 818, 819 (D.C.1994) (per curiam) (Farrell, J., concurring), the Court observed that the focus of the Rule

---

**3.** Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

" 'is on whether the offense 'indicate[s] lack of those characteristics relevant to law practice,' and '[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.' " HC Rpt. Finding 4.

16. On December 21, 2000, Petitioner was hit by a car and hospitalized. He recovered in a nursing home until May 2001. HC Rpt. Finding 8.

17. During his recovery, on January 30, 2001, Petitioner filed with the Board Office his Petition for Reinstatement and the required Reinstatement Questionnaire. In the Petition for Reinstatement, Petitioner stated that he "has not consumed an alcoholic beverage in over three (3) years." Petition for Reinstatement at 2.

18. As evidenced by Findings 8, 10, and 11 above, Petitioner's statement that he had not had any alcohol in three years was false. See HC Rpt. at 7 n. 2 (the Hearing Committee expressly finds statement "not credible").

19. The Reinstatement Questionnaire submitted by Petitioner asked, "[h]ave there been or are there now any charges, complaints, grievances pending concerning your conduct as an attorney in any bar of which you are a member or have ever been a member other than the District of Columbia Bar." Petitioner answered "No." Reinstatement Questionnaire at 4. The Reinstatement Questionnaire stated: "List any discipline for misconduct of petitioner other than that which forms the basis for the suspension or disbarment involved in this petition, in any jurisdiction where petitioner has been admitted to practice law. A certified copy of any official action to that effect in any jurisdiction shall be at-

tached to this questionnaire and petitioner shall also provide a description of the misconduct and the specific disciplinary action(s)." Petitioner Responded, "None." Reinstatement Questionnaire at 5.

20. In light of Finding 7, above, Petitioner's responses to the Reinstatement Questionnaire were, at best, incomplete.[4]

21. Since his release from the nursing home in May 2001, Petitioner has had no permanent residence. Tr. II at 120. At the time of the hearing, he was sleeping in an emergency shelter on a night-to-night basis. Tr. II at 121.

22. Since his release from jail in December 1999, Petitioner has not held steady employment, and he could not identify anyone for whom he has worked. Tr. II at 122, 138–41, 152. To the extent Petitioner has sought employment, he has focused his efforts on law-related employment, such as law clerk and paralegal work, but he has not been accepted for such positions. Tr. II at 151–52. Petitioner has made some effort at other employment, but no significant effort in that regard. Tr. II at 156, 158.

23. Petitioner has made little, if any, effort to utilize the services available to him through the Virginia and District of Columbia Bars or, even, to determine whether any services are available to him. Tr. II at 152–53. Petitioner has not attended any continuing legal education ("CLE") courses. See Tr. II at 151–52.

24. Petitioner stated, on several occasions during the hearing, that he did not consider his alcohol use, or his recovery therefrom, to be significant to the fitness hearing. Tr. II at 118–19 (he did not consider proof of attendance at AA meetings to be persuasive evidence); Tr. II at

---

4. Cf. Tr. II at 145 (Petitioner testified that he does not consider voluntary surrender of his license discipline in Virginia).

132 ("[T]o me that is not the issue here. If I took a drink somewhere in the last year and a half or two years or whatever, I did not believe that that was the issue here on my fitness to practice law now.").

25. Petitioner was seen by a clinical psychologist, Dr. William J. Stejskal, on September 10, 2001. Petitioner exhibited symptoms of mild intoxication at that time. HC Rpt. Finding 9.

## III. CONCLUSIONS OF LAW AND RECOMMENDATION

D.C. Bar R. XI, § 16(d), of the District of Columbia Court of Appeals Rules Governing the Bar, provides that

the attorney seeking reinstatement shall have the burden of proof by clear and convincing evidence. Such proof shall establish:

(1) that the attorney has the moral qualifications, competency, and learning in law required for readmission; and

(2) that the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

Review of whether a petitioner has satisfied his burden of proof is conducted within the framework of the factors listed in *In re Roundtree*, 503 A.2d 1215 (D.C.1985); *see In re Patkus*, 841 A.2d 1268 (D.C.2004) (per curiam). The *Roundtree* factors are: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) the attorney's recognition of the seriousness of the misconduct; (3) the attorney's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to

practice law. *Roundtree*, 503 A.2d at 1217. We address these factors in turn.

### 1. Nature and circumstances of misconduct

Petitioner was suspended for violation of Rule 8.4(b), criminal conviction reflecting adversely on his fitness to practice law. Specifically, Petitioner was convicted on two counts of DWI, one count of eluding a police officer, and one count of hit and run. He was sentenced to 12 months on each of the counts, to run consecutively. There is little doubt that Petitioner's conduct was serious. Further, as the Hearing Committee noted, "Petitioner's problems with the law have resulted from alcohol abuse. He has had seven arrests for DWI, and six convictions. The hit and run and eluding convictions were also alcohol-related, as have been his difficulties obeying court-ordered probation terms. But for the alcohol abuse, leading to the motor vehicle violations, Petitioner would not have been subjected to the disciplinary process." HC Rpt. at 4.

### 2. Recognition of seriousness of misconduct

This *Roundtree* factor has been consistently relied upon by the Court as a predictor of future conduct. If a petitioner does not acknowledge the seriousness of his or her misconduct, it is difficult to be confident that similar misconduct will not occur in the future. Failure to carry the burden on this factor has often been recited as a ground for denial of a reinstatement petition. *See In re Molovinsky*, 723 A.2d 406, 409 (D.C.1999) (per curiam); *In re Lee*, 706 A.2d 1032, 1035 (D.C.1998) (per curiam) (appended Board Report); *In re Fogel*, 679 A.2d 1052, 1055 (D.C.1996). The Hearing Committee concluded that Petitioner had not met his burden of proof on this factor. Specifically, the Committee concluded, and we agree, that there "is no

evidence that Petitioner has acknowledged the seriousness of the long pattern of unlawful conduct in which he has been engaged." HC Rpt. at 5.

Although Petitioner claims that he acknowledged "the seriousness of his offenses in the eyes of the law," which seriousness "manifested itself in substantial time of incarceration," Petitioner's Post–Hearing Reply Brief at 2, this is merely a statement that the crimes for which he was convicted are serious crimes. It is not his own recognition of the seriousness of his actions. Indeed, Petitioner attempted to diminish the seriousness of his conduct, referring to his crimes in his post-hearing brief to the Hearing Committee as mere "traffic violations." Petitioner's Post–Hearing Brief at 1.

Further, Petitioner fails to see the import of his alcohol abuse (which caused his criminal conduct) in relation to his fitness to practice law. When suspending Petitioner in 2000, the Court stated, "[w]hile as Respondent points out, Respondent's abuse of alcohol has not yet prompted a client to complain to Bar Counsel, it would be inappropriate to ignore the pattern of Respondent's inability to comply with his responsibilities under the law and the implications of that persistent failure for his fitness as an attorney." *In re Reynolds*, 763 A.2d at 714. Nonetheless, in these proceedings Petitioner once again highlighted the fact that no disciplinary complaints were raised against him by clients[5] and provided no credible evidence to indicate that he has taken the necessary steps to address his alcohol abuse. Even his own statements regarding his alcohol use are conflicting. *Compare* Reinstatement Questionnaire at 2 (as of January 2001 Petitioner had not consumed alcohol in three years) *with* Tr. II at 132 ("[T]o me

that is not the issue here. If I took a drink somewhere in the last year and a half or two years or whatever, I did not believe that that was the issue here on my fitness to practice law now."). Petitioner has failed to meet his burden of proving that he recognizes the seriousness of his conduct, and the fact that it was caused by his alcohol abuse.

### 3. Post-discipline conduct

The Hearing Committee that initially recommended Respondent's suspension issued its report on January 19, 2000. Between that time and December 2000, when the Court issued its final opinion in the matter, Petitioner tested positive for alcohol use, in violation of the rehabilitation programs with which he was then involved, on three occasions. *See* Findings of Fact 8, 10, 11. Although there is no direct evidence of alcohol use or criminal conduct after that time, Bar Counsel is not required to prove improper post-suspension conduct. Rather, the burden rests on Petitioner to prove good conduct, specifically, improvement in the conduct that lead to his discipline. *See Patkus*, 841 A.2d at 1269 (petitioner who had been disbarred for misappropriation had obligation to prove improvement in his precarious personal financial situation that led to misappropriation). Petitioner has failed to meet this burden.

In his Post–Hearing Reply Brief, Petitioner stated that he "continues to seek" treatment for his alcohol abuse. Post–Hearing Reply Brief at 2. The Hearing Committee concluded that this "would appear to be an acknowledgment that Petitioner has not yet changed his pattern of alcohol consumption. Certainly there is no clear and convincing evidence that he has." HC Rpt. at 7. Petitioner provided no docu-

---

5. *See* Tr. II at 113–14; Post–Hearing Brief at 1–2; Post–Hearing Reply Brief at 1–2.

mentary proof of successful attempts at rehabilitation, nor any witnesses who could testify to such attempts. The only witness other than Petitioner who testified as to Petitioner's post-discipline conduct, Dr. Stejskal, testified that Petitioner appeared to be intoxicated at his evaluation in September 2001. We agree with the Hearing Committee that Petitioner has not met his burden of proof on this *Roundtree* factor.

### 4. Present character

Petitioner is required to prove that:

those traits which led to the petitioner's disbarment no longer exist and, indeed, that petitioner is a changed individual having full appreciation of his mistake and a new determination to adhere to the high standards of integrity and legal competence which this Court requires.

*In re Brown,* 617 A.2d 194, 197 n. 11 (D.C.1992) (quoting *In re Barton,* 291 Md. 61, 432 A.2d 1335, 1336 (1981)). The Court has stressed the obvious importance of this factor, and the need for a petitioner to put on live witnesses familiar with the underlying misconduct who can provide credible evidence of a petitioner's present good character. *See In re Tinsley,* 668 A.2d 833, 838 (D.C.1995) (per curiam) (appended Board Report) (testimony of two character witnesses insufficient because not familiar with petitioner's misconduct); *Fogel,* 679 A.2d at 1056 (same). Petitioner failed to provide any witnesses to testify as to his character.

Further, the Court has recently reiterated that "evasiveness on the reinstatement questionnaire negatively reflects on present character to resume practice...." *Patkus,* 841 A.2d at 1270 (citing *In re Robinson,* 705 A.2d 687, 689–90 (D.C.1998)). Petitioner made at least one false statement in his Petition, *see* Finding 18, and also engaged in omissions that were misleading, even if not intentional, *see* Find-

ing 20. As a result, we find Petitioner has failed to meet his burden of proving present good character.

### 5. Present qualifications and competence to practice law

This factor requires Petitioner to demonstrate by clear and convincing evidence that he is competent to practice law. The *Roundtree* court emphasized that, "[l]earning in the law is an important factor in every reinstatement case. A lawyer seeking reinstatement after a period of suspension or disbarment should be prepared to demonstrate that he or she has kept up with current developments in the law." *Roundtree,* 503 A.2d at 1217 n. 11 (D.C. 1985); *see also In re Anderson,* 741 A.2d 37, 38 (D.C.1999) (per curiam) (considering "learning in the law required for re-admission").

The Court considers various factors when assessing competence. These include whether petitioner has furthered his legal education through CLE programs, *see Roundtree,* 503 A.2d at 1218 (considering petitioner's "participation in continuing legal education programs" and "acquisition of computer skills" when granting reinstatement); *In re Blondes,* 732 A.2d 262 (D.C.1999) (per curiam) (finding that auditing a two-credit CLE course on professional responsibility and ethics demonstrated petitioner's qualifications and competence to practice law); *In re Bettis,* 644 A.2d 1023, 1030 (D.C.1994) (finding that petitioner had established competence where he "worked as a law clerk...and improved his legal research and writing skills" and witnesses testified to his "particular expertise" in medical malpractice and personal injury); or kept abreast of developments in the law by reading legal journals and periodicals. *See In re Harrison,* 511 A.2d 16, 19 (D.C.1986) (finding petitioner competent where he presented evidence that

he had kept up with developments in the law through reading and maintaining professional contacts).

Although Petitioner claims to have read publications related to his prior practice area, to have discussed cases with practicing attorneys he meets in the library, and to have provided assistance to clients on patent applications (which do not require a licensed attorney), he presented no documents or witnesses to support these contentions. *See* Petition for Reinstatement at 2; Tr. II at 138–41. Respondent has [neither] taken any CLE courses, nor engaged in any significant legal work. The record, thus, offers no evidence of Petitioner's current competence to practice law. *Cf. Patkus,* 841 A.2d at 1270 (petition for reinstatement denied where petitioner had taken no CLE courses since 1995, notwithstanding evidence that petitioner handled eight administrative matters that did not require representation by a licensed attorney). Indeed, the record offers no evidence of Petitioner's ability to hold any kind of employment whatsoever. *Cf. In re Kerr,* 675 A.2d 59, 61–62 (D.C.1996) (per curiam) (petitioner reinstated 19 years following disbarment upon proof that she had earned doctorate in psychology and practiced as a psychologist, taken over 30 hours of CLE courses, and acted as expert witness in psychology and thus came into contact with the courts); *In re Smith,* No.

89–428, Order (D.C. Oct. 9, 1990) (per curiam), *In re Smith,* No. 89–428, Order (D.C. Mar. 7, 1990); *In re Smith,* No. 89–428, Joint Recommendation (D.C. Apr. 6, 1990) (after a disability suspension, attorney who had managed mechanical contracting company and gave advice to former employees and attorney friends was initially denied reinstatement, but agreed to meet conditions including (i) proof of attendance at a six-part CLE "Bridge the Gap" course; (ii) six months of part-time work as a law clerk for two lawyers, in the areas of civil and criminal practice; and (iii) submission of affidavits from the lawyers confirming the hours the petitioner worked, the nature and duration of employment and whether he fulfilled his responsibilities in a satisfactory manner, and was, upon meeting such conditions, granted reinstatement). Petitioner has, thus, failed to meet his burden of proving competence necessary for reinstatement.[6]

## IV. *CONCLUSION*

Having found that Petitioner has failed to meet his burden of proving his fitness by clear and convincing evidence, the Board recommends that the Petition for Reinstatement be denied.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: s/Roger A. Klein

Roger A. Klein

---

6. The testimony of Dr. Stejskal suggests that Petitioner would have significant difficulty practicing law. Specifically, Dr. Stejskal found that Petitioner suffers from neurological deficits that impair his judgment, analytical functioning, and ability to "think on his feet," Tr. at 93, and adjust to changing circumstances in such a way that it would be very difficult for Petitioner to function in the practice of law, and especially difficult for him to do so on his own. *See generally* Tr. II at 51–58, 93–98, 103–05. The Hearing Committee did not expressly accept or reject the doctor's testimony in its Report. Presumably, the Committee found it unnecessary to do so in light of Petitioner's failure to provide any evidence of competence. We agree that it is unnecessary to rely on Dr. Stejskal's testimony at this juncture. We note, however, that this conclusion is based solely on the lack of evidence presented by Petitioner and should not be interpreted as suggesting that the Board accepts Petitioner's post-hearing argument that such expert testimony was biased or unpersuasive because the expert did not know Petitioner when he was practicing law. *Cf.* Petitioner's Post–Hearing Brief at 2–3.

Dated: May 6, 2004

All members of the Board concur in this Report and Recommendation.