**In re John A. TURNER, Jr., Petitioner.**

**A Member of the Bar of the District of Columbia Court of Appeals. (Bar Registration No. 193920).**

**No. 06–BG–1046.**

District of Columbia Court of Appeals.

Submitted Dec. 1, 2006.
Decided Dec. 28, 2006.

---

352

Before RUIZ and GLICKMAN,
Associate Judges, and SCHWELB, Senior
Judge.

PER CURIAM:

Petitioner John A. Turner, Jr., an attorney disbarred by this Court in 1993 for intentional misappropriation of client funds, has applied for reinstatement to the District of Columbia Bar pursuant to D.C. Bar Rule XI, § 16(d). The application has been considered by a Hearing Committee of the Board on Professional Responsibility and by the Board itself. Both the Hearing Committee and the Board have concluded that petitioner is rehabilitated and currently fit to practice law, and they recommend that petitioner be reinstated, subject to certain specified conditions. *See* D.C. Bar Rule XI, § 16(f). Bar Counsel endorsed petitioner's application before the Hearing Committee and has taken no exception to the recommendations in favor of reinstatement with conditions.

■ The misconduct that led to petitioner's disbarment was quite serious, and it required sustained and strenuous efforts on his part to justify the recommendations in his favor. To gain reinstatement, a petitioner "must establish by clear and convincing evidence that (1) he has the 'moral qualifications, competency, and learning in law required for readmission,' and (2) his resumption of the practice of law 'will not be detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest.'" *In re Reynolds*, 867 A.2d 977, 978 (D.C.2005) (quoting D.C. Bar R. XI, § 16(d)). *See also In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985). "[T]he ultimate decision on whether an attorney is reinstated is ours alone." *Roundtree*, 503 A.2d at 1217. However, in making that decision, we do attach "great weight" to the Board's positive recommendation, *id.*, especially when Bar Counsel supports it. *See Reynolds*, 867 A.2d at 978; *In re Patkus*, 841 A.2d 1268, 1269 (D.C.2004); *In re Roxborough*, 775 A.2d 1063, 1064 (D.C.2001). We are mindful that "caution should be exercised in ordering reinstatement where, as in this case, substantial amounts in restitution remain to be paid." *Roxborough*, 775 A.2d at 1065. Nonetheless, for the reasons persuasively set forth in the Board's report, which we attach to this opinion, we are satisfied that petitioner has met his heavy burden of proof. Accordingly, petitioner John A. Turner, Jr., is hereby reinstated to the Bar of the District of Columbia, effective immediately, subject to the conditions set forth in the Board's report.

*So ordered.*

ATTACHMENT

DISTRICT OF COLUMBIA
COURT OF APPEALS

BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of:

JOHN A. TURNER, JR.,

Petitioner.

Bar Docket No. 127–05
Prior Proceedings:
No. 93–SP–:1348, Bar Docket No. 144–91 and 145–91
(D.C. Nov. 3, 1993) (Ferren, J., Sullivan, J., and Belson, J.)

*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This matter comes before the Board on Professional Responsibility (the "Board") on a petition for reinstatement filed pursuant to Board Rule 9.1 and D.C. Bar R. XI, § 16(d). The petition was considered by Hearing Committee Number Ten (the "Committee"), which recommended that Petitioner be reinstated, subject to certain

conditions. Bar Counsel does not object to the Committee's recommendation. The Board concurs that Petitioner has demonstrated his fitness to practice and should be reinstated to the practice of law.

We adopt all the Hearing Committee's factual findings and summarize them below in our discussion of the reinstatement criteria.

## I. *Procedural History*

The District of Columbia Court of Appeals (the "Court") issued an Order disbarring Petitioner on consent on November 3, 1993. The underlying misconduct involved the misappropriation of funds from the estates of two wards for whom Petitioner had been appointed as guardian.

At the hearing, Bar Counsel and Petitioner presented documentary and testimonial evidence. The witnesses included Petitioner and others who testified, among other things, as to Petitioner's remorse and acceptance of responsibility for his conduct, as well as one of the wards from whom Petitioner misappropriated funds. Documentary evidence also was presented reflecting Petitioner's activities since disbarment, including his participation in legal conferences and his authorship of legal articles.

## II. *Reinstatement*

Pursuant to D.C. Bar R. XI, § 16(d), an attorney seeking reinstatement is required to:

> establish by clear and convincing evidence that (1) he [or she] has the 'moral qualifications, competency, and learning in law required for readmission,' and (2) his [or her] resumption of the practice of law 'will not prove to be detrimental or harmful to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest.'

*In re Reynolds,* 867 A.2d 977, 978 (D.C. 2005) (per curiam).

In determining whether a petitioner has met the above standards, the Court has articulated five factors which are set out in *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985). The *Roundtree* factors are: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) the attorney's recognition of the seriousness of the misconduct; (3) the attorney's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law. *Id.* at 1217–1218. We treat these factors in turn.

## A. *Nature and Circumstances of Misconduct*

In consenting to disbarment, Petitioner admitted to intentional misappropriation from the estates of two wards for whom he served as court-appointed guardian. In the first matter, he removed $8,500 in estate funds from a conservatorship account and used the funds for the personal purpose of paying costs associated with his office. In the second matter, he misappropriated $67,500 from the estate and neglected to pay estate taxes on the estate property.

Petitioner resorted to the misappropriations when he experienced financial difficulties in his practice arising from a reduction in work from the District of Columbia Public Service Commission, upon which his practice was heavily dependent. Initially, Petitioner attempted to sell his condominium office and when he could not, he then misappropriated the funds. The Hearing Committee found that Petitioner intended to borrow the funds. Prior to his disbarment in November 1993, he repaid $65,000 to one of the estates, and sureties paid the

estates in question $19,786.49 and $8,516.48, respectively for the two misappropriations.

### B. *Recognition of Seriousness of Misconduct*

A petitioner's recognition of the seriousness of the misconduct has been consistently relied upon by the Court as a predictor of future conduct. If a petitioner does not acknowledge the seriousness of his or her misconduct, it is difficult to be confident that similar misconduct will not occur in the future. Failure to carry the burden on this factor has often been recited as a ground for denial of a reinstatement petition. *In re Molovinsky,* 723 A.2d 406, 409 (D.C.1999) (per curiam); *In re Lee,* 706 A.2d 1032, 1035 (D.C.1998) (per curiam) (appending Board Report); *In re Fogel,* 679 A.2d 1052, 1055 (D.C.1996).

In the instant matter, the Board concurs with the Committee's finding that Petitioner has demonstrated by clear and convincing evidence that he recognizes the seriousness of his misconduct and in effect demonstrated sufficient remorse for that conduct. The Committee found Petitioner's testimony to be credible and noted that in his testimony, Petitioner made no excuses for his conduct and acknowledged that his actions were intentional, dishonest and a breach of trust, findings that the Board finds are supported by substantial evidence in the record. Further, Bar Counsel agrees that Petitioner acknowledged his misconduct and accepted full responsibility for it. Brief of Bar Counsel (Feb. 21, 2006) at 4–5.

### C. *Post–Discipline Conduct*

As to Petitioner's post-discipline conduct, the Board notes that when the misappropriations were discovered in 1989, Petitioner ended his practice, and he has not practiced law since that time. The record shows that for a period of time since his disbarment, Petitioner has held a series of jobs, which have provided him with limited and sporadic income. The employment included working with the non-profit organization, Minority Business Enterprise Legal Defense and Education Fund, Inc. (the "Fund") to promote government procurement opportunities for women and minorities, working as a substitute elementary school teacher in the District of Columbia public school system, and working with the University of the District of Columbia in various capacities.

While the record shows that Petitioner did not have steady income for a period of time, and thus did not have the ability to pay restitution, he did make efforts to do so. He made three such payments to the Clients' Security Fund in 1999 but discontinued the payments because of financial difficulties. When his situation changed in 2005, Petitioner initiated a formal payment plan to pay $75 monthly to the surety companies in question. At the time of the Hearing Committee's decision, Petitioner had made the scheduled payments for eight months. Hearing Committee Report at 8.

With regard to the prevention of future wrongs, the Board notes that while the Hearing Committee gave weight to Petitioner's testimony that he will not resume the private practice of law, it found other factors even more persuasive. Since his disbarment, Petitioner has held responsible jobs and is making attempts at restitution. Further, during this period, he has been involved in constructive and praiseworthy endeavors which have included teaching continuing legal education ("CLE") courses, speaking at bar association conferences in the areas of contracting and small business development opportunities for women and minorities, assisting attorneys with legal writing and publishing a number of legal articles.

### D. *Present Character*

Petitioner is required to prove that he has the character to practice law and that the character flaws that led to his disbarment no longer exist and, indeed, that he is a changed individual having full appreciation of the wrongfulness of his conduct and a new determination to adhere to the high standards of integrity and legal competence which the Court requires. *See In re Brown*, 617 A.2d 194, 199 (D.C.1992) (citing *In re Barton*, 291 Md. 61, 432 A.2d 1335, 1336 (1981)). The Court has stressed the obvious importance of this factor, and the need for a petitioner to put on live witnesses familiar with the underlying misconduct who can provide credible evidence of a petitioner's present good character. *Fogel*, 679 A.2d at 1056 (testimony of witnesses insufficient where not familiar with details of disbarment); *In re Tinsley*, 668 A.2d 833, 838 (D.C.1995) (per curiam) (appending Board Report) (same).

Based on Petitioner's conduct since his disbarment, the Board finds that he has demonstrated the requisite good character to support reinstatement. Witnesses and Petitioner testified to Petitioner's commitment to civil rights, his work as a teacher, his extensive work with the Fund, his advising of young attorneys, as well as his embarrassment and remorse for his misconduct. A witness expressed the belief that Petitioner would not repeat the same or similar misconduct. *See In re Fogel*, 728 A.2d 668, 671 (D.C.1999) (per curiam) (appending Board Report); *In re Casalino*, 741 A.2d 38, 39 (D.C.1999).

### E. *Present Qualifications and Competence to Practice Law*

This factor requires Petitioner to demonstrate by clear and convincing evidence that he is competent to practice law. The *Roundtree* court emphasized that "[l]earning in the law is an important factor in every reinstatement case. A lawyer seeking reinstatement after a period of suspension or disbarment should be prepared to demonstrate that he or she has kept up with current developments in the law." *Roundtree*, 503 A.2d at 1218 n. 11; *see also In re Anderson*, 741 A.2d 37, 38 (D.C. 1999) (per curiam) (considering "learning in the law" for re-admission).

The Court considers various factors when assessing competence to practice. They include whether petitioner has furthered his legal education through continuing legal education programs, *see Roundtree*, 503 A.2d at 1218 (considering petitioner's "participation in continuing education programs" and "acquisition of computer skills" when granting reinstatement; *In re Blondes*, 732 A.2d 262 (D.C. 1999) (per curiam) (finding that auditing a two-credit CLE course on professional responsibility and ethics demonstrated petitioner's qualification and competence to practice law); performed legal work, *In re Bettis*, 644 A.2d 1023, 1030 (D.C.1994) (finding that petitioner had established competence where he "worked as a law clerk . . . and improved his legal research and writing skills" and witnesses testified to his "particular expertise" in medical malpractice and personal injury); or kept abreast of developments in the law by reading legal journals and periodicals. *See In re Harrison*, 511 A.2d 16 (D.C. 1986) (finding petitioner competent where he presented evidence that he had kept up with developments in the law through reading and maintaining professional contacts).

Applying the foregoing criteria to the instant matter, the Board finds that while Petitioner may not have practiced since

1989 and was disbarred in 1993, his activities since his disbarment demonstrate his qualifications and ability to resume the practice of law. Specifically, as the Hearing Committee noted, Petitioner, as an authority in the area of small business development and minority contracting, has written numerous articles, which have been published. Further, he has attended and spoken at annual meetings of the National Bar Association, taught CLE courses and participated in panels at the David A. Clarke School of Law of the University of the District of Columbia.

### III. *Conditions of Reinstatement*

■ Having determined that Petitioner has established by clear and convincing evidence that he is fit to resume the practice of law and should be reinstated, the Board now addresses whether his reinstatement should be with or without conditions. Under D.C. Bar R. XI, § 16(f), an order of reinstatement may be conditioned upon the making of complete or partial restitution to persons harmed by the misconduct, upon the payment of all or a part of the costs of the reinstatement proceedings, or such other conditions as the Court deems appropriate. D.C. Bar R. XI, § 16(f); *see In re Roxborough,* 775 A.2d 1063 (D.C.2001) (per curiam) (compliance with restitution plan required for reinstatement).

■ Pursuant to the rule, conditions may be imposed on a petitioner found to be fit to resume practice if such conditions are designed or deemed necessary to ensure fitness in the initial period after he or she returns to the practice of law. *See In re McConnell,* 667 A.2d 94, 97 (D.C.1995) (per curiam). The Board concurs with the Hearing Committee that, in situations such as this where a petitioner has not practiced law for an extended period of time, conditions are appropriate. The propriety of conditions under the present circumstances is supported by the fact that Petitioner is currently in the early stages of making meaningful restitution for his misconduct. Similarly, the fact that Petitioner's misconduct stemmed from financial difficulties and those difficulties continue, supports the imposition of conditions of reinstatement. Petitioner should understand that a material failure to comply with the conditions could result in new disciplinary action. Accordingly, the Board recommends conditions to ensure that Petitioner continues to make restitution and that he capably and ethically handles the financial responsibilities attendant to the practice of law.

### IV. *Conclusion*

Based on the foregoing, the Board recommends Petitioner's reinstatement with the following conditions:

1. Petitioner meet with The Law Practice Management Advisory Service (the "LPMAS") at least one month prior to resuming the private practice of law or the practice of law in any other setting in which he is responsible for the funds of clients or third parties, and follow LPMAS's recommendations;

2. Petitioner shall certify to the Court, with copies to the Board and Bar Counsel that he has enrolled in and completed a course in financial management within the first year after his reinstatement;

3. Petitioner should be required to continue making monthly restitution payments of at least $75 each to the Hartford Insurance Company and to the Old Republic Insurance Company until he has made full restitution;

4. Petitioner should file annual reports regarding restitution with the Court

of Appeals, with copies to the Board on Professional Responsibility and the Office of Bar Counsel;

5. That, at least annually, Petitioner will review his financial condition and inform the insurance companies in writing whether he can accelerate his payments, and, if so, by what amount; and

6. Petitioner is required to certify to the Court, with copies to the Board on Professional Responsibility and Bar Counsel and provide evidence that he has completed at least two hours of CLE courses in the area of legal ethics within the first year after his reinstatement. If Petitioner resumes the private practice of law or enters into a legal practice in which he will have responsibility for the funds of clients, he shall first certify and present evidence that he has completed a legal ethics CLE course devoted substantially to trust accounts and an attorney's responsibility for entrusted property and funds.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ Charles J. Willoughby
Vice Chair

All members of the Board concur in this Report and Recommendation except Ms. Jeffrey, who is recused, and Ms. Coghill-Howard, who did not participate.